NEW-YORK,
Nov. 1810.

The People *against* Babcock.

The People
v.
Babcock.

THE defendant was convicted, at an *oyer and ter-iner* held in *Oneida* county, in *June* last, of a *cheat.* The indictment stated, that one *Rufus Brown* and *Ira Dickinson* had obtained a judgment before one of the justices of the peace, in and for the county of *Oneida,* against *Babcock,* and that the said *Babcock,* being an evil-disposed person, on the 4th of *August,* 1807, at, &c. falsely, fraudulently, and deceitfully, and by false arts, colours and pretences, did obtain, acquire, and get into his hands and possession of and from the said *Rufus Brown,* who was a partner with the said *Dickinson,* and had a joint interest with the said *Dickinson* in the said judgment, a certain paper writing, being a receipt for eighteen dollars, and discharge of the said judgment in the words and figures following: " Mr. *Reuben Leavenworth,* Esquire, Sir, I-have received of *Oliver Babcock* eighteen dollars, for that judgment obtained before you, in favour of *Rufus Brown* and *Ira Dickinson,* and wish you to discharge the same by the said *Babcock's* paying the cost. *Utica, August* 4th, 1807. *Rufus Brown;*" under colour and pretence that he the said *Babcock* would then and there pay ten dollars in cash immediately towards the said judgment, and give his note for the residue immediately, and under pretence that he had the money in his pocket; and that the said *Babcock* did then and there fraudulently and unlawfully carry off the said paper writing without paying the said ten dollars, which he pretended that he was then and there ready to pay, and without giving his note for the residue as aforesaid, with an intent to deceive and defraud the said *Rufus Brown,* and also the said *Ira Dickinson,* of the

To constitute a cheat or fraud, an indictable offence at common law, it must be such a fraud as would affect the *public;* such a deception that common prudence cannot guard against; as by using false weights and measures, or false tokens, or where there is a conspiracy to cheat. Where *A.* had a judgment against *B.,* and *B.* came to *A.* and said he would settle it, by paying money in part, and giving a note for the residue, on which *A.* drew a receipt in full in discharge of the judgment, and *B.* got possession of the receipt without paying the money or giving the note; and the indictment charged him with having obtained the receipt falsely, fraudulently and deceitfully, and under false acts, colours and pretences, and under pretence that he had the money in his pocket, and would pay it immediately, and give his note for the residue, it was held that

there was no *false token,* but only a false assertion, and that an indictment would not lie.

NEW-YORK,
Nov. 1810.

The PEOPLE
v.
BABCOCK.

money due by virtue of the judgment aforesaid, to the great damage, &c.

Gold moved in arrest of judgment, on the ground that the offence, as charged, was not indictable at common law. Words or assertions, however artful and false, if unaccompanied with such visible and false tokens as may affect and deceive the public at large, will not amount to an indictable offence. In the case of *The King v. Wheatley,** Lord *Mansfield* held that the offence, to be indictable, must be such a one as affects the *public;* as if a man uses false weights and measures, and *sells* by them, or uses them in the general course of his dealing; so if he defrauds another, under *false tokens;* for these are deceptions against which common prudence cannot sufficiently guard. Mr. *East,*† in his *Treatise on the Crown Law,* has adopted this distinction between such frauds or cheats as are indictable, and such as are not. He has examined all the cases on the subject, and shown most clearly, that a *private* cheat, though accompanied with false assertions, is not indictable. He has laid down a rule, extracted from a confused mass of cases, which will furnish an easy and sure guide in regard to such offences.

* 2 Burr. 1125.
See Rex v.
Young, 3 Term
Rep.104. 6 Mod.
42. Sayer, 146.
1 East's Rep.
185. 2 Stra. 866.
6 Term Rep.565.

†2 East's C. L.
816—834.

*Van Vechten*, Attorney-General, and *N. Williams,* contra. Since the statutes relative to obtaining money or goods by *false tokens*, or under *false pretences*, there are very few frauds that do not come within the purview of that statute. For this reason we find very few modern cases of indictments at common law for such cheats. But indictments in cases like the present are to be found in the more ancient books, and are supported by the principles laid down by some of the best elementary writers. *Hawkins*† says, those cheats " which are punishable at common law, may, in general, be described to be deceitful practices in defrauding or endeavouring to de-

† Hawk. P. C.
c. 71. s. 1.

·fraud another of his own right, by means of some artful
device, contrary to the plain rules of common honesty;
as by playing with false dice, or by causing an ·illiterate
person to execute a deed. to his prejudice,· by reading it
over to him in words different from those in which it
was written," &c.

*Blackstone\** classes .cheating· among ·offences against
public trade, which are indictable; and he says, " Any
deceitful practice, in cozening another by artful means,
whether, in matters of trade or otherwise, as by playing
with false dice, or the like, is punishable with fine, im-
prisonment and the pillory."

*Comyns,†* in his *Digest,* says, " Justices of the peace
may inquire of any thing done to the fraud or deceit of
another; as if a man read a writing to an illiterate per-
son, in other words than those in which it is written,
by which means he seals it.‡

Lord *Holt§* said, " That all cheats and abuses of
tradesmen are indictable." And in *Rex* v. *Wheatley,*
*Wilmot,* J. said, " That where false tokens are produced,
or such methods taken to cheat and deceive, as people
cannot, by ordinary care and prudence be guarded
against it, is an indictable offence."

. In the case of *The Queen* v. *Crisp,¶* an indictment
was held to ·lie for tearing an account, after it was sign-
ed and settled; and the indictment charged that *A.* got
it into ·his hands *per falsas et sinistras insinuationes,*
and *vi et armis* tore it, &c. A motion was made in that
case to quash the indictment, because it was a *private*
offence, but the court denied the motion.

In the case of *The Queen* v. *Mackerty and another,\*\**
the defendants were indicted for selling wine for *Lisbon*
wine, when it was not; one of them pretending to be a
wine-merchant and a dealer in *Lisbon wine,* when he
was not, affirmed it to be *Lisbon wine,* and obtained from
the party a quantity of hats; and the indictment was
held to ·lie. The court said there was enough set out

NEW-YORK,
Nov. 1810.

The PEOPLE
v.
BABCOCK.

\* 4 *Comm.* 157.

† 4 *Com. Dig.*
554. *Justices.*
(*B.* 32, 33.)

‡ 1 *Sid.* 312.431.

§ *Comb.* 16.

¶ 6 *Mod.* 175.

\*\*2 Lord *Raym.*
1179. 6 *Mod.*
201. S. C.
*Noy's Rep.* 103.

* Cr. Circ. Ass.
270.

† 3 Inst. 133. 4
Bl. Comm. 159,
160.

‡ Dog. Cr. Cir.
Comp.288. King
v.Jones, 1 Leach,
161.

in the indictment to show the defendants to be cheats. Mr. *East* treats this as a case of a *conspiracy;* but there is nothing in the indictment to warrant that assertion.* He thinks the indictment must be for a conspiracy, or for using false public tokens, as false dice, false measures, &c. but in the cases he has cited, it is declared that false dice or false tokens, &c. may be adopted as different modes of cheating. Independent of the statute, an indictment would lie at common law for cheating with *false tokens,* though not for *false pretences.*† In regard to the former, the statute of 33 *Hen.* VIII. merely authorized corporal punishment to be inflicted; but it was before punishable by fine and imprisonment. It is true no indictment lies for a cheat effected by a bare naked lie; and such are the cases cited by *East,* in support of his doctrine; but it is otherwise, where there is an artful contrivance against which common prudence could not well guard. There are precedents of indictments also to be found in cases similar to the present.‡

*Per Curiam.* Lord *Kenyon* said that the case of the *King* v. *Wheatley* (2 *Burr.* 1125.) established the true boundary between frauds that were, and those that were not indictable at common law. That case required such a fraud as would affect the public; such a deception that common prudence and care were not sufficient to guard against it, as the using of false weights and measures, or false tokens, or where there was a conspiracy to cheat. Thus, in the case of *Jones,* (1 *Salk.* 379.) who obtained money of *A.,* pretending to have a command from *B.,* whereas *B.* did not send him; but as he came with no false token, it was held not to be indictable. The offence was nothing more than telling a lie. So in the case of The *King* v. *Lara,* (6 *Term Rep.* 565.) the defendant got possession of certain lottery tickets, the property of *A.,* pretending that he wanted to purchase them, and he delivered to *A.* a fictitious order on a

banker, knowing that he had no authority to draw it, by means of which he got possession of the lottery tickets. On the argument in arrest of judgment, it was admitted, that as this was a fraud upon a private individual, the prosecutor must show that the fraud was effected by means of a false token, as well as a false pretence, and one of such a nature as that ordinary prudence could not guard against it. The counsel for the crown contended, that the false pretence was the alleged wish to purchase, and the false token was the order. But the court said that there was no false token; that it would be ridiculous to call the check a false token, and that all depended upon the credit due to the defendant's assertion, and the judgment was arrested.

In the present case we search in vain for the *false token.* There was nothing beyond the defendant's false assertion that he was ready to pay the judgment. There was not even the production of either note or money; and common prudence would have dictated the withholding of the receipt until the money was paid and the note drawn. To support this indictment would be to overset established principles.

The judgment must, therefore, be arrested.

Judgment arrested.