## *The* STATE *vs.* REUEL MILLS.

17 211
87 465

Where an indictment for cheating by false pretences alleges that the goods were obtained by several specified false pretences, it is not necessary to prove the whole of the pretences charged; but proof of part thereof, and that the goods were obtained thereby is sufficient.

Where it was proved on the trial of such indictment, that the owner of a horse represented to another, that his horse, which he offered in exchange for property of the other, was called the *Charley,* when he knew that it was not the horse called by that name, and that by such false representation he obtained the property of the other person in exchange; *it was held,* that the indictment was sustained, although the horse said to be the *Charley* was equal in value to the property received in exchange, and as good a horse as the *Charley.*

EXCEPTIONS from the Court of Common Pleas, WHITMAN C. J. presiding.

The indictment charges, in the language of the exceptions, " that the said *Mills* on, &c. contriving and intending, knowingly and designedly, by false pretences to cheat and defraud one *John Loring* of his money, goods, wares and merchandize, and other things, did, knowingly and designedly, falsely pretend to said *Loring,* that a certain horse, which he, the said *Mills,* then wished and offered to exchange with said *Loring* for a certain colt and five dollars in money, was then and there a sound horse, and was the horse called the *Charley,* the said horse called the *Charley* being well known to said *Loring* by true and correct representations which he had received, although he had not seen said horse called the *Charley,* &c.

by which false pretences said *Mills* then and there induced the said *Loring* to exchange with and deliver to said *Mills* his said colt and five dollars in money for said horse falsely represented as aforesaid to be the *Charley,* &c., whereas in truth and in fact the said horse which said *Mills* offered to and exchanged with said *Loring* and which he represented as a sound horse and. as the horse called the *Charley* was not a sound horse, and was not the horse called the *Charley,* but was a different horse and unsound, and wholly worth= less, &c."

At the trial, after the allegations set forth in the indictment had been proved, except the averments as to soundness, *Mills* intro= duced evidence tending to prove that the horse exchanged by him with said *Loring* was sound in every way and of equal or greater value than the said colt and five dollars received of said *Loring,* and was as good a horse as the *Charley.* And it was proved that *Loring* in the early part of the evening on which the exchange was made, with the aid of a lamp, went into a shed where the horse represented as the *Charley* stood, not in a stall, and examined the horse, and that the horse was open to full inspec= tion. The counsel for *Mills,* contended, that this indictment could not be sustained. The Judge charged the jury, that the compara= tive value of the two horses was of no consequence in the case ; that although the jury might be satisfied that the horse received by *Loring* was sound and of a value equal to the value of the colt and five dollars, it could not avail the defendant ; but if the jury were satisfied that *Loring* was deceived by the false representation of *Mills,* either in regard to the soundness of the horse, of which they from the evidence might reasonably doubt, or as to its being the horse called the *Charley,* and parted with his property in con= sequence of either of said misrepresentations, it was their duty to return a verdict of guilty. And that it was not necessary for the government to show either that *Loring* received an unsound horse, or that he received a horse of less value than the *Charley,* provided he received a different horse from the *Charley.*

The jury returned a verdict of guilty, and *Mills* filed excep= tions.

*H. W. Fuller, Jr.* argued for *Mills.*

1. The offence charged, if wholly proved, is not indictable.

By the common law, no indictment could be sustained " for a naked lie, or false affirmation." 2 *Russ. on Crimes,* 1375, 1378. False tokens must have been used. 2 *Burr.* 1127 ; *ib.* 1130. Or there must have been a conspiracy to defraud. 2 *Barn. &amp; Ald.* 204 ; *Leach,* 274 ; 6 *T. R.* 628. Mere deception is not enough. " Shall we indict a man," says *Holt C. J.* " for making a fool of another." *Regina* v. *Jones,* 1 *Salk.* 379 ; *S. C. Ld. Raymond,* 1013. The fraud must have been such as affected the public, as using false weights. 2 *Russ. on Cr.* 1360 *and note,* 1374, 1380. And such that common prudence could not guard against it. 2 *Stark. Ev.* 467, 471 ; *Cross* v. *Peters,* 1 *Greenl.* 387 ; *People* v. *Stone,* 9 *Wend.* 182. The *stat.* 33, *Hen.* 8, *c.* 1, was then passed, explanatory of the common law, and providing the mode of conviction and punishment but creating no new offence. The proof required was the same. 2 *Russ. on Cr.* 1383 ; *People* v. *Babcock,* 7 *Johns. R.* 201 ; *Commonwealth* v. *Warren,* 6 *Mass. R.* 72. Next followed *stat.* 30 *Geo.* 2, *c.* 24, and which, in consequence of the decision in *Commonwealth* v. *Warren,* was adopted in *Massachusetts, (stat.* 1815, *c.* 136*)* ; and adopted in the State of *New-York,* in consequence of the decision in *The People* v. *Babcock.* Our *Stat.* 1821, *c.* 13, is precisely the same as the 30 *Geo.* 2, *c.* 24, and is the sole ground of this indictment. All the *Massachusetts, New-York* and *English* decisions, made after the adoption of that statute, are therefore applicable. *Cross* v. *Peters,* 1 *Greenl.* 387 ; *People* v. *Johnson,* 12 *Johns. R.* 204. The *stat.* 33, *Hen.* 8, was the same in effect as the common law, and the *stat.* 30 *Geo.* 2, *c.* 24, only enlarges the description in the former statute. Both are made *in pari materia,* and whatever has been determined in the construction of one is a sound rule of construction for the other. 2 *Russ. on Cr.* 1385, citing 2 *T. R.* 586. Neither statute has ever been applied to cases where common prudence would guard against it, nor to cases not affecting the public. *Cross* v. *Peters,* before cited. In this case common prudence would have guarded against the representations charged. Nor are they such as affect the public. Hardly an exchange of horses takes place without statements as high colored, and as false as this. All falsehoods are not indictable. In civil cases, even, no action lies for falsely affirming the cost or worth

of an article, or the object of a purchase. *Vernon* v. *Keys*, 12 *East*, 632. Or the grounds for delay of payment of a note. 1 *Tyler*, 387. Or for falsely saying that another would not allow him to give more for an estate, although another may be deceived thereby. *Vernon* v. *Keys*, 4 *Taunt.* 488 ; 2 *Stark. Ev.* 468. If then, the false affirmation as to the quality of an article, at the time of sale, is not indictable, then surely the false affirmation as to the name of an article, *a fortiori*, is not indictable.

2. If two false statements jointly are indictable, each one separately is not ; and the Judge erred in telling the jury, that either was sufficient. From the instruction, the jury were to find the accused guilty, if either the horse was unsound, or was not the *Charley.*

To represent falsely that an unsound horse is sound, is not indictable. 1 *Burr.* 1128 ; 1 *Stark. Rep.* 402 ; 1 *Carr. & P.* 661 ; *Lambert* v. *The People*, 9 *Cowen*, 606 ; *Say*, 205 ; 4 *M. & Selw.* 214. Or for a false pretence that the accused had money and would pay for an article on delivery. *Rex* v. *Goodale*, *R. & Ry. C. C.* 461 ; *Russ. C. & M.* 300 ; 7 *Carr. & P.* 352 ; 1 *Salk.* 289.

3. The Judge erred in virtually directing the jury, that the comparative value of the horses was of no consequence ; and that it was sufficient if *Loring* was deceived, even if he was not in the least defrauded. *Cabbet's Cr. Law*, 215 ; 1 *Russ. & R. C. C.* 106 ; 3 *B. & Cr.* 700. There are some loose remarks in the *per Curiam* opinion in *Commonwealth* v. *Wilgus*, 4 *Pick.* 177, and the case was rightly decided on other principles. There is a great difference between fraud and deceit. A man may be deceived by being persuaded that a thing is worse than it is. But fraud implies that the worse is received instead of the better. 2 *Stark. Ev.* 467. Can *Mills* be punished criminally for transferring to *Loring* a better horse than he represented his to be ? Can a man be liable to be treated in law as a criminal for selling for firewood hickory instead of hemlock, if he called it hemlock and took but the price of hemlock ? And yet the instruction of the Judge goes to this extent. Fraud without damage, or damage without fraud furnishes no ground for indictment. *Cross* v. *Peters*, before cited ; *Robts.* 523.

4. The charge is erroneous, because the jury were instructed, that a verdict of guilty should be returned, if *Loring* was deceived by the false affirmation of *Mills*, and parted with his property in consequence of such representation. It makes the intention of *Mills* of no importance, whether he intended to deceive *Loring*, or did not. 2 *Stark. Ev.* 563.

*G. M. Weston*, County Attorney at the time of the argument, being called on to support the indictment, which however was not drawn by him, contended, that an indictable offence was charged in the indictment. Originally, it is true, no offence of this character was indictable unless it was a public offence. The statute of *Hen.* 8, enlarged the common law and made certain offences against individual rights, when accompanied by false pretences, indictable. The *Stat. Geo.* 2, already cited by the counsel for *Mills*, was still more extensive, and included in the list of indictable offences cases of frauds. It has been truly stated that the latter statute has been adopted both in *Massachusetts* and in *Maine*. By our statute it is an indictable offence to defraud by false pretences. *Stat.* 1821, *c.* 13 ; 6 *T. R.* 565; 3 *Campb.* 370. If the proof of either one of the pretences is sufficient to support the indictment, and it is proved, it is all which the law requires. It is not necessary to prove every thing which is alleged in an indictment. 2 *M. & Selw.* 384. The Judge could not have intended to instruct the jury, that *Mills* should be found guilty, unless they found that he knew the pretences to be false when he made them. The expressions imply that the pretences were made with the knowledge that they were false. It is not contended that a mere false representation, when no one is defrauded, can support the indictment. But here there was fraud. The man did not obtain the article he bargained for ; and it is no answer to say, that another esteems it equally valuable. He is not under obligations to purchase an article he does not want, although others may think it is equally good. A mere attempt to defraud, it is admitted, is not indictable. Here the attempt succeeded, and the man was defrauded.

The opinion of the Court, was drawn up by

Weston C. J.—The false pretences charged are, that the horse of the defendant was sound when it was unsound; and that he pretended it was the horse called the *Charley*, when in fact it was not that horse. Whatever conflict of testimony may exist, as to the first part of the charge, and assuming that it was not supported by the evidence, the second part of the charge is well sustained, and is not controverted by the defendant. The falsity practised by *Mills*, is alleged to have been done *scienter;* and it is stated that the case was proved. The Judge instructed upon the point of the defence, namely, that the other party was not deceived.

The jury must be understood to have found, that the defendant obtained from the injured party his colt and five dollars, upon the false pretence, that the defendant's horse was known by the name of the *Charley*. And the question is, whether it presents a case, under the statute of 1821, *c.* 13, for the suppression and punishment of cheats, which corresponds with the *English* statute of 30 *George* 2, *c.* 24.

The authorities cited for the defendant, appear to maintain the position, that the facts were not indictable at common law, or under any of the *English* statutes, prior to the one last cited. *English* cases under that statute are in point, and deserve respectful consideration. Decisions arising in civil suits, to several of which we have been referred, are calculated to afford very little aid in the determination of the question.

In *Rex* v. *Young et als.* 3 *T. R.* 99, it was said by *Lord Kenyon*, that the statute of *George* was intended to be general, but that it was not easy to draw the line, and to determine to what cases the statute shall extend. But it was held to include a false pretence, that a certain bet had been made, by which the prosecutor had been defrauded of his money. *Ashurst J.* said, that the statute was intended to protect the weaker part of mankind. A false pretence by a common carrier, that he had delivered certain goods, and had taken a receipt therefor, which he had lost, whereby he obtained pay for their carriage, was held to be within the statute. *Rex* v. *Aivey*, 2 *East*, 30.

Among the precedents given by *Chitty*, of indictments under this statute, 3 *Chitty on Criminal Law*, 1006, are false pretences,

that W. R. was a merchant of good fortune, that a child was a pauper of the parish, and that a person, on whom the prisoner drew, was indebted to him, and a gentleman of fortune. A false pretence by *Count Villeneuve*, that he was employed by the *Duke de Lauzun* to take some horses from *London* to *Ireland*, and that being detained by contrary winds he had spent his money, stated by *Buller J*. in *Rex* v. *Young*, was held to be within the statute. So was a false pretence by the prisoner, that he was sent by a neighbor to borrow money. *Rex* v. *Colman*, 2 *East*, *P. C.* 673.

In *Rex* v. *Dale*, 7 *Car. & Payne*, 352, it was held sufficient to sustain an indictment, for obtaining a filly on false pretences, to prove that any one of the pretences was false, and that the injured party was induced thereby to part with his property. It was held to be a false pretence under the statute of *George* 2, where the prisoner obtained money from the keeper of a post-office, by assuming to be the person mentioned in a money order, which he presented for payment, though he did not make any false declaration in order to obtain the money. And it was further held, that it was not necessary to prove the whole of the pretence charged, that proof of part of the pretence, and that the money was obtained by such part, is sufficient. *Rex* v. *Story*, 1 *Russell & Ryan*, 80.

But a pretence, that the party would do an act, he did not mean to do, (as a pretence to pay for goods on delivery,) is not a false pretence within that act, the court saying it was a mere promise for future conduct, and common prudence and caution would have prevented any injury arising from the breach of it. *Rex* v. *Goodhall*, 1 *Russell & Ryan*, 461. In that case the goods were sent by a servant, as they were to be paid for on delivery, the falsity of the pretence became known to the servant, before the goods were finally parted with.

A false pretence to a parish officer, as an excuse for not working, that the party has not clothes, though he really has, which induces the officer to furnish him clothes, is not within the act, the court holding it was a false pretence to avoid work, not to obtain clothes. *Rex* v. *Wakeling*, 1 *Russell & Ryan*, 504. But if the false pretence had been to obtain the clothes, it would doubtless have been regarded as within the statute.

In *Rex* v. *Douglas*, 2 *Russell & Ryan*, 462, the prisoner obtained a sovereign of the prosecutor, whose mare and gelding had gone astray, under pretence, that he would tell him where they were, but did not. The court held the indictment should have stated, that the prisoner pretended to know where they were. And if it had contained such an averment, it would have sufficiently appeared from his conduct, that he pretended to know that fact.

In the *Commonwealth* v. *Wilgus*, 4 *Pick.* 177, assuming a false name, and making false representations in regard to lottery tickets, was held to be within the statute. The court say, that a mere naked lie may not be sufficient, but admit that it is difficult to draw the line.

The horse, called the *Charley*, might have had the reputation of possessing qualities, which rendered it desirable for the party injured to become the owner of him. The defendant produced a horse, which he affirmed was the *Charley*. It was a false pretence, fraudulently made, for the purpose of procuring a colt and money from another. The attempt succeeded. These facts the jury have found. It is a case litterally within the statute; and we do not perceive why it is not within the mischief, it was intended to punish. To sustain it would not be going farther than precedents warrant. If the construction should be narrowed to cases, which might be guarded against by common prudence, the weak and imbecile, the usual victims of these pretences, would be left unprotected. It may not be easy to lay down any general rule, with proper qualifications and limitations; but in the case before us, we are of opinion, that the offence charged has been committed.

*Exceptions overruled.*