RANNEY *v.* THE PEOPLE.

The statute (ch. 138 of 1853), " to punish gross frauds and suppress mock auctions," extends to no other frauds than such as were indictable at common law, except mock auctions.

The obtaining of money by means of a representation that the prisoner could give employment to the party defrauded at a stipulated compensation in a certain locality, and cheating him into a contract for services to be rendered in another locality, is not indictable at common law, or under the statute of false pretences. (2 R. S., 677.)

WRIT of error to the Supreme Court. Ranney was tried at the New York General Sessions upon an indictment charging that, with intent, &c., he did falsely and fraudulently pretend and represent to one John Hock that he (Ranney) had employment for Hock in the city of New York and in the State of New Jersey; that he wished Hock to collect money and do other business for him in those localities; that he would pay Hock for such services the sum of $50 a month, his board and traveling expenses; and that Hock must deposit with him $100 as security for the faithful discharge of the duties of his employment. The truth of the pretences was negatived; and it was charged that Ranney had no intention of employing Hock, or of paying him the stipulated wages, and that by these means Ranney obtained of Hock $100. Upon the trial it was proved that Hock, a German, was attracted to Ranney's office by an advertisement of the latter in a German newspaper. The

pretences were proved as laid in the indictment. Hock deposited with Ranney $100 as security, and when he presented himself with an offer to go to work, Ranney told him he must go to the State of Ohio and sell books, and collect money for books sold. Hock demurred, on the ground that his engagement was to work in New York and New Jersey, but was inveigled by Ranney into signing a written contract (the terms of which he did not understand), for traveling in Ohio upon the terms as to compensation set forth in the indictment. There was proof that Ranney had defrauded sundry other foreigners in the same way. The judge charged the jury that the prisoner was not guilty of the offence of obtaining money under false pretences; but instructed them, under exception by the prisoner, that if they believed the prisoner had, by a gross fraud or cheat, obtained Hock's money, then he might be convicted under the statute of 1853. The conviction having been affirmed by the Supreme Court at general term, in the first district, the defendant sued out a writ of error from this court.

· *James T. Brady*, for the plaintiff in error.

*John Sedgwick*, for the defendants in error.

COMSTOCK, Ch. J.   The offence charged consisted in a false representation made by the prisoner to Hock that he could give to him a certain employment, and in a false and fraudulent promise that he would employ him and pay him fifty dollars a month for his services. Hock, believing the representation and relying on the promise, deposited $100 as a security on his part for the faithful performance of the contract. The question is, whether the prisoner obtained this money by means which are denounced and punished by the criminal law.

It is conceded that such a cheat as this was not indictable at the common law, because no false tokens were used, and because the fraud, in respect to the instrumentality by which it was accomplished, had no special reference to the public

interest. The transaction was simply a private cheat, without a conspiracy, and having, certainly, no extraordinary circumstances of art or contrivance. (*The People* v. *Babcock*, 7 Johns., 201; *Rex* v. *Wheatly*, 2 Burr., 1125; *Rex* v. *Lara*, 6 Term R., 565.) But the offences belonging to this general class which are punishable criminally have been considerably extended by legislation both in England and this country. The English statute of 30 George II, chapter 24, introduced a new rule, by declaring that, "if any person shall knowingly and designedly, *by false pretence*, obtain any money, goods or chattels, &c., with intent to cheat or defraud any person, he shall be punished, &c." This statute was repealed; but the act of 7 and 8 George IV, chapter 229, section 53, which is now the law of England, provided, in similar language, that "if any person shall, *by any false pretence*, obtain from any other person any chattels, money or valuable security, with intent to cheat or defraud any person of the same, such person shall be guilty of a misdemeanor," and punished as therein required. The language of the statute of George II was transcribed into the criminal code of this State at an early day. (1 R. L., 410.) In the revision of 1830, the means by which criminal cheats and frauds can be perpetrated are described in the words, "by color of any false token or writing, or by any other false pretence;" and the offence is raised to the grade of a felony by declaring that the offender may be punished by imprisonment in a state prison. (2 R. S., 677; id., 702, § 30.) We come next to the act of 1853, "to punish gross frauds and to suppress mock auctions.". (Laws of 1853, 219.) From the preamble of this act it is evident that the suppression of mock auctions in the city of New York was the object chiefly aimed at. But in the enacting part (§ 2), it is made a criminal offence to obtain money or property, not only by that particular instrumentality, but by "*any other gross fraud or cheat at common law;*" and the punishment prescribed is imprisonment in the state prison or in the county jail, or by a fine not exceeding $1,000. Under this statute it is claimed that the indictment and conviction in the present case can be sustained.

But, putting aside such frauds and cheats as are consummated by means of mock auctions, we think the act of 1853 has not created any new offence. In the previous legislation of England and this State, the words "false pretence" were used as descriptive of indictable cheats. The nature of the pretence has never been defined by the law-making power, except that it must be false. We suppose, and so it has been often held, that it may include any artfully contrived misrepresentation or falsehood, although no false tokens are used, and although the cheat is not of a kind which affects the public at large. In the act of 1853 the descriptive. words are, "other gross fraud or cheat at common law." There is some reason for saying that these words include only such frauds and cheats as were indictable at common law; and this construction is preferable to one which would indiscriminately convert into crime every fraudulent dealing or practice which might be a cause of action for damages in the civil courts. If we were to adopt that construction, then a fraudulent warranty in a horse trade would be a felony, and the offender might be punished in the state prison. The cheat, it is true, must be a "gross" one; but that term suggests no legal standard or test. One court and jury might think the fraudulent representation to be slight and venial, and another might consider it gross or criminal. There would be no certainty or rule in the administration of the law. Even a mere suppression of the truth may be, in many circumstances, a very gross fraud, according to a popular acceptation of those terms; yet we cannot suppose that the legislature intended it should be indicted and punished as a crime. Great insecurity to the citizen would be the result of such a construction; and we must, therefore, look for a milder one. If, besides the main purpose of the act, which was to punish and suppress mock auctions, we do not confine its operation to such other frauds as were indictable at common law, we certainly ought not, in the absence of a plain expression of the legislative will, to give it a broader scope than the courts have allowed to previous statutes which punished as criminal certain frauds under the name of false pretences. If it may be thought an objection

to this view that the legislature would not reënact in substance what had already been enacted, the answer is, that statutes are not unfrequently passed containing such provisions. It is only too true that laws are often enacted without attending to the existing rule on the subject to which they relate. In respect to the act of 1853, it may be further observed, that the punishment provided is quite different from that prescribed in the previous statute of 1830. We may, therefore, impute an intelligible purpose to the legislature, without supposing that anything new was intended in the definition of the crime.

Assuming, then, as we do, that false pretences, in former statutes, and gross fraud or cheat, in the more recent act, mean essentially the same thing—or, certainly, that there is no difference which is favorable to the indictment in this case—can the judgment be sustained? We think it cannot. There are numerous cases in the books of indictments under the statutes against fraud by false pretences, and they are not all agreed in principle or result; but I think there are none which sustain this indictment. Some of them seem to require more, and others less, of art or contrivance in the means of accomplishing the fraud; but, according to all of them, there must be, at least, a direct and positive false assertion as to some existing matter by which the victim is induced to part with his money or property. In this case, the material thing was the promise of the accused to employ the person defrauded and to pay him for his services. There was a statement, it is true, that the prisoner had employment which he could give to Hock; but this was obviously of no importance without the contract which was made. The false representation complained of was, therefore, essentially promissory in its nature, and this has never been held to be the foundation of a criminal charge. Undoubtedly, the accused, in performance of his contract, could have taken Hock into his employment, even if he had nothing for him to do at the time the contract was made. But this he did not do, and, doubtless, never intended to do. In morals, the imposition was gross and detestable. But, in logic and law, the offence consisted in making a false and delusive pro-

mise, with no intention of performing it. This is not indictable. The judgment should be reversed, and the prisoner discharged.

All the judges concurring,

Ordered accordingly.