THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* JOHN H. BLANCHARD, Appellant.

Upon the trial of an indictment for obtaining goods by means of false representations, it is not necessary that the prosecution should prove all the false representations alleged in the indictment.

Where representations set forth in the indictment are proved, the sense in which they were used, and what was designed to be, and was understood from them, are questions for the jury.

An indictment for false pretenses may not be founded upon an assertion of an existing intention, although it did not in fact exist; there must be a false representation as to an existing fact.

On the trial of an indictment for obtaining a number of cattle by false pretenses, it appeared that the vendor sold the cattle to the prisoner at Buffalo, and received his check post-dated for the purchase-price, upon his representation that he was buying and wanted the cattle for G., who lived at Utica; that they were for G., who would remit the price in time to meet the check; the prisoner had been in the habit of purchasing cattle to supply G., as a customer, and of selling them to him, and had general authority so to buy whenever cattle were low; two days before the purchase G. had written to the prisoner, stating that he wanted a choice lot of cattle, and requesting him to send on a car-load. The prisoner,

however, instead of sending the cattle to G., shipped them to Albany, sold them at a reduced price, and did not pay the check. *Held,* that a conviction was error; that while there might have been a fraud, there were no false pretenses, as the vendor was cheated not by any false statement of facts on the part of the vendee, but by reliance upon a promise not meant to be fulfilled, and a false statement as to intention.

*Lesser* v. *The People* (73 N. Y. 78), distinguished.

(Argued October 11, 1882 ; decided November 14, 1882.)

Appeal from judgment of the General Term of the Superior Court of Buffalo, entered upon an order made May 15, 1882, which affirmed a judgment entered upon a verdict convicting the defendant of the crime of obtaining property by false pretenses.

The indictment charged that defendant, on the 10th day of February, 1880, at the city of Buffalo, with the intent to cheat and defraud John Thompson, did " unlawfully, knowingly and designedly, falsely pretend and represent unto the said John Thompson, that he, the said John H. Blanchard, was agent for Otto Gulick, of Utica; and that he wanted to buy eighteen cattle for Otto Gulick, of Utica ; and that Otto Gulick, of Utica, wanted him to buy for him and send him eighteen cattle, and that he had a contract with Otto Gulick, of Utica, for buying cattle for said Gulick, and that said Gulick had agreed to pay him one dollar a head for buying cattle for him ; and the said John Thompson then and there believing the false pretenses and representations so made, as aforesaid, by the said John H. Blanchard and, being deceived thereby, was induced, by reason of the false pretenses and representations so made as aforesaid, to deliver, and did then and there deliver, to the said John H. Blanchard, eighteen cattle, of the value of $1,157.07."

The material facts appear in the opinion.

*Samuel Hand* for appellant. A statement of an intention to do a certain thing, although made to induce the sale and although the buyer had not the intention stated, is not a false pretense within the statute. (*Ranney* v. *People,* 22 N. Y.

413; *Rex* v. *Goodall*, Russ. & Ry. 561; *Rex* v. *Douglas*, 1 Moody's C. C. 462; *Scott* v. *People*, 62 Barb. 62; *Reg.* v. *Lee*, 9 Cox's Cr. Cas. 304; *Rex* v. *Dale*, 7 C. & P. 352; *People* v. *Tompkins*, 1 Park. Cr. 224; 2 Russell on Crimes [6th ed.], 300; Bishop on Cr. Law [5th ed.], 419, 479; *Com.* v. *Fisher*, 9 Phila. 594; *Johnson* v. *State*, 41 Tex. 65; *Archer's Case*, Dearsley's C. C. 453; *Reg.* v. *Bates*, 3 Cox's Cr. Cas. 203, 204; *Rex* v. *Johnston*, 2 Moody's C. C. 254; *State* v. *McGee*, 11 Ind. 155, 156; *Glackan* v. *Com.*, 3 Metc. [Ky.] 233; *People* v. *Getchell*, 6 Mich. 496; *Cowan* v. *People*, 14 Ill. 348; *Com.* v. *Frey*, 50 Penn. St. 245; *Reg.* v. *Archer*, 1 Jurist [N. S.], 479; 2 Whart., § 2118.) Where there are no means of knowing which one of two inconsistent allegations in an indictment the prosecution means to rely upon, and plainly he cannot rely upon both, the indictment will be insufficient. And where the repugnant matter is inconsistent with any preceding averment, it may be rejected as surplusage. (Bish. Crim. Pro., §§ 489–491.) In criminal law there is no presumption of identity from similarity of names. (2 Phillips on Ev. 510, marg. pag.)

*Tracy C. Becker* for respondent. The evidence on the part of the prosecution in this case was not only sufficient to be submitted to the jury, but also was sufficient to establish the guilt of the defendant. (30 Geo. II, chap. 24; 7 and 8 Geo. IV, chap. 30, § 53; 24 and 25 Victoria, chap. 96; 3 N. Y. R. S. [7th ed.] 2493; *Young* v. *Rex*, 3 Term R. 98; *Mitchell's Case*, 2 East's P. C. 936, cited in *Comm.* v. *Burdick*, 2 Barr. 163; 5 Penn. L. J. 173; *Rex* v. *Jackson*, 3 Campb. 370; *Rex* v. *Parker*, 8 C. & P. 825; *Smith* v. *People*, 47 N. Y. 303; *Moley* v. *State*, 31 Ind. 192; *People* v. *Herrick*, 13 Crendell, 87; *State* v. *Phifer*, 65 N. C. 321; Wharton's Cr. Law, § 1135; *People* v. *Conger*, 1 Wheel. Cr. Cas. 449; *People* v. *Haynes*, 11 Wend. 365 · *People* v. *Kendall*, 25 id. 399; *Clifford* v. *State*, 56 Ind. 345; *State* v. *Timmons*, 98 id. 195; *Rex* v. *Bull*, 13 Cox's C. C. 608; *Rex* v. *Burnsides*, Bell's C. C. 282; 8 Cox's C. C. 375; *Comm.* v. *Drew*, 19 Pick. 179; *State* v. *Tomlin*, 5 Dutcher, 13; *State* v. *Cuba*, 26 Wis. 217; *Tyler* v.

*State,* 2 Hample, 37 ; *Rex* v. *Cooper,* L. R., Q. B. D. 510 ; *S. C.,* 36 L. J. 671; 13 Cox's C. C. 617 ; *State* v. *Vanderbilt,* 3 Dutcher, 328 ; *Lesser* v. *The People,* 72 N. Y. 78; *Rex* v. *Archer,* 1 Jurist [N. S.], 479 ; 33 E. L. & E. 528 ; 6 Cox's C. C. 515 ; *Ranny* v. *The People,* 22 N. Y. 413 ; *Rex* v. *Hunter,* 10 Cox's C. C. 642 ; 16 W'kly Rep. 342; *Thomas* v. *People,* 34 N. Y. 351; *Bowler* v. *The State,* 41 Miss. 570; *Rex* v. *Hamilton,* 9 Ad. & El. [N. S.] 271; *Rex* v. *Jennison,* 9 Cox's C. C. 158; *People* v. *Cook,* 6 Park. Cr. 31; 5 Park. 142; *S. C.,* 1 Sheldon, 17; *Collins' Case,* 4 City Hall Rec. 143.; *People* v: *Dalton,* 2 Wheel. C. C. 161; *People* v. *Johnson,* 12 Johns. 292; *Heath's Case,* 1 City Hall Rec. 116 ; *Rex* v. *West,* 8 Cox's C. C. 12 ; *Rex* v. *Asterlegh,* 7 C. & P. 191; *State* v. *Rowley,* 12 Conn. 101; *Rex* v. *Fry,* 17 Cox's C. C. 394; D. & B. 499 ; *People* v. *Stetson,* 4 Barb. 151; *Comm.* v. *Coe,* 115 Mass. 481; *People* v. *Herrick,* 13 Wend. 87 ; *People* v. *Haynes,* 14 id. 56; *State* v. *Mills,* 17 Me. 211; *State* v. *Thatcher,* 35 N. J. 445; *Fay* v. *Comm.,* 28 Gratt. 912 ; *Smith* v. *State,* 55 Miss. 513 ; *In re Schneider,* 17 Kans. 542; *Cowen* v. *People,* 14 Ill. 348; *State* v. *Vorbeck,* 66 Wis. 168 ; *People* v. *Stone,* 9 Wend. 182; *Skiff* v. *People,* 2 Park. Cr. 139.) While the prosecution must make out all the elements of its case, this is to be done inferentially as close as possible, and when a reasonable certainty is reached it is for the defendant to produce the affirmative proof requisite to break down the prosecutor's approximate case. (2 Whart. Cr. L., §§ 1165, 1166; *Rex* v. *Burnsides,* Bell's C. C. 282 ; *S. C.,* 8 Cox's C. C. 370 ; 2 Whart. Cr. Ev., §§ 321, 356, 357; *Lazarus Case,* 1 City Hall Rec. 189; 2 Whart. Ev., § 1330 ; *Skellbeck* v. *Garbett,* 7 Q. B. 846; *Hetherington* v. *Kemp,* 4 Camp. 193 ; *Ward* v. *Lord Londesborough,* 12 C. B. 252 ; *Spencer* v. *Thompson,* 6 Ir. L. R. [N. S.] 537, 565 ; *Stocken* v. *Callen,* 7 M. & W. 515 ; *Tanner* v. *Hughes,* 53 Penn. St. 290 ; *Comm.* v. *Jeffries,* 7 Allen, 548 ; *U. S.* v. *Babcock,* 3 Dillon, 571 ; 2 Whart. Ev., § 1328 ; *Oakes* v. *Weller,* 16 Vt. 63 ; *Zink* v. *People,* 77 N. Y. 144.) Evidence of similar false representations to other persons was admissible. (*Beilschofsky* v. *The People,* 3 Hun,

40; *S. C.,* 60 N. Y. 616; *Mayer* v. *People,* 80 id. 364, and note, 373.) The record of the U. S. mails on February 10 was also admissible. (2 Whart. Ev., § 1328.) The book of deeds, showing a general assignment by Blanchard, about the time the check to Thompson fell due, was properly received. (*Levy* v. *People,* 80 N. Y. 326, 335; *People* v. *Ferguson,* 8 Cow. 102; 1 Whart. Ev., §§ 701, 739; *State* v. *Bartlett,* 55 Me. 200; *Goodell* v. *Hibbard,* 32 Mich. 48 ; *Comm.* v. *Costello,* 120 Mass. 358.)

FINCH, J. The defendant was indicted for obtaining property under false pretenses. The representations alleged to be false were stated in the indictment to have been that the accused "was agent for Otto Gulick of Utica, and that he wanted to buy eighteen cattle *for* Otto Gulick of Utica; and that Otto Gulick of Utica wanted him to buy *for* him and send him eighteen cattle; and that he had a contract with Otto Gulick of Utica for buying cattle *for* said Gulick, and that said Gulick had agreed to pay him one dollar a head for buying cattle *for* him." Taking this accusation as a whole, and construing it in the ordinary sense and acceptation of the language used, it charges a false representation or agency in the purchase of the cattle for Gulick. It begins with that distinct assertion, and every thing added is, on its face, not only consistent with it, but tends to strengthen and corroborate such averment. Representing himself to be Gulick's agent, he says that he wants to buy eighteen cattle *for him;* that is, he, as Gulick's agent, which he claims to be, desires to buy the property for his principal. He adds that Gulick wants him "to buy for him" the eighteen cattle; that is, the principal desires the agent to make that particular purchase in his behalf. The accused adds, finally, that he has a contract with Gulick for making such purchases, by the terms of which he, the agent, receives one dollar a head for the cattle bought. It is impossible to misunderstand the tenor of these representations taken together. They import an agency existing, action desired and intended under such agency, and a compensation of one dollar a head

as the reward for the service rendered. If precisely the representations stated in the indictment had actually been made to the vendor of the cattle, he would have understood and been justified in understanding that he was selling his cattle to Gulick through Blanchard as his agent, and that the sole interest of the latter in the transaction was to perform his duty and earn his commission as agent. · If they are to be thus understood, and taken as a whole, there was a total failure of proof, for it was conceded that Blanchard did not at all profess or pretend to be Gulick's agent, or to be buying for him as principal for a commission payable to the agent. The vendor sold to Blanchard with no rights or recourse against Gulick, and took the former's individual check for his pay, so that the representations alleged in the indictment, taken as a whole, were unproved in their entire scope and meaning.

But they were not so taken and construed. While the indictment must show what the false pretenses were, and state them with reasonable certainty and precision (*Rex* v. *Mason*, 1 Leach's C. C. 487 ; *Reg.* v. *Henshaw*, L. & C. 444), it is not necessary that the prosecution should prove them all. (*State* v. *Mills*, 17 Me. 211 ; *Rex* v. *Hill*, R. & R. C. C. 190.) A conviction was had in the present case, founded upon a part only of the representations stated in the indictment, which was permissible ; but those claimed to be established were taken out of and separated from their context, and clothed with a new and different meaning, and this presents what there is of the first point argued on behalf of the appellant. Disregarding entirely the alleged claim of agency, two statements were culled from the representations recited in the indictment and made the sole basis of the conviction. These were that Blanchard said " he wanted to buy eighteen cattle for Otto Gulick " and "that Otto Gulick wanted him to buy for him and send eighteen cattle;" and the meaning attached by the court and jury to these words, was that Blanchard represented that he wanted to buy in his own name and on his own responsibility for Otto Gulick as a customer of his, and that Gulick stood

ready as such customer to make the purchase and take the property.

It is now said that the accused was indicted for one thing, and convicted of another; that he was charged with a representation of agency and convicted on a representation which imported the exact contrary; that the final construction put upon the words selected out, makes them inconsistent with and repugnant to the other representations alleged, and introduces contradiction into the indictment; and that, therefore, the words relied on cannot bear the new sense given to them, and must still be read in the light of their context.

The argument in this direction is not without force. The evil it points out is that the accused may have been misled; that coming prepared to meet an accusation that he falsely represented himself to be Gulick's agent, and to be purchasing as such, he is suddenly confronted with a charge that he claimed to be buying for Gulick as a customer ready to take the property by purchase from the defendant as owner and vendor. It was held in *The King* v. *Stevens* (5 East, 244) that "every indictment must contain a complete description of such facts and circumstances as constitute the crime without inconsistency or repugnancy;" and Lord ELLENBOROUGH said that if the language "be clearly capable of different meanings it does not appear to clash with any rule of construction applied even to criminal proceedings, to construe it in that sense in which the party framing the criminal charge must be understood to have used it if he intended that his charge should be consistent with itself."

We should be impressed with the force of this argument but for two considerations. The representations relied on were proved almost literally as they stand in the indictment, and in such case it appears to be the rule that the sense in which they were used, the meaning they were intended to bear, and what was designed to be and was understood from them, is a question for the jury. (*Reg.* v. *Archer*, 6 Cox's Cr. Cas. 518.) And besides, we are unable to see how the question of variance was fairly raised. The representations proved were

received without objection that they were not pleaded. The motion to direct a verdict for the defendant went upon no such distinct and definite ground, and none of the exceptions to the charge present the question. It is best, therefore, to consider the main question argued at the bar. Objections were taken which go to the foundation of the criminal accusation and which raise the inquiry whether any false pretenses were established. Those recited in the indictment and proved upon the trial resolve themselves into two elements : *first*, the assertion as an existing fact of a present business relation between Blanchard and Gulick; and, *second*, the expression of an intention to act upon and in accordance with such relation. The accused declared that he was buying the cattle for Gulick; that he couldn't make a draft on him, for he wouldn't allow him to draw ; that he wanted the cattle for Otto, because they would suit him ; that they were for Gulick, who would remit the price in time to meet the defendant's post-dated check. There is here clearly asserted an existing business arrangement between Blanchard and Gulick, calculated, if truly stated, to influence the purchaser. It imported that Gulick, at that time, desired to purchase of Blanchard eighteen cattle, selected by the latter, and stood ready to take them and pay for them. That was a representation of an existing fact. It imported also that Blanchard was buying with reference to this fact and with intent to resell to Gulick, and with the means thus obtained meet his post-dated check. That was a representation of an existing intention and promissory in its nature. By a false assertion of the existing business relation Thompson could be deceived; by a false assertion of Blanchard's purpose and intention, he could not be. As to that he was forced to rely upon the defendant's honesty and integrity, and necessarily took that risk.

It is now claimed that the representations of fact, the assertion of an existing business relation between Blanchard and Gulick, were not shown to be false, and were proved to be true. If the jury were not authorized to conclude that Gulick's

letter to Blanchard, dated February 9th, reached him on the morning of the 10th, before he arrived at the cattle-yards in East Buffalo, that contention was correct. In his letter of February 8th, Gulick told Blanchard that he wanted a choice lot of cattle and requested him to send on a car-load. He testified also that Blanchard had a general authority to buy for him as a customer whenever cattle were low, and had made purchases for him under both general and special authorities for a long time and to a large amount ; and that while he had never forbidden drafts on himself, he had requested Blanchard not to draw, but allow him to remit. Disregarding for the present the letter of the 9th, and the fact appears to be that when Blanchard bought these cattle, Gulick *did* want them; he *did* desire defendant to buy them for him as a customer; he *did* stand ready to take them and pay for them ; and desired to remit the price and not be drawn upon for it. When, therefore, Blanchard made the representation stated in the indictment, that Gulick wanted him to buy for him eighteen head of cattle, he told the truth. The business relation alleged to exist *did* exist, and the facts concerning it were not mis-stated, unless, as we have before intimated, the jury were warranted in finding that the letter of the 9th reached Blanchard before his purchase on the 10th. The letter itself is open to the criticisim that it does not countermand the order of the day before. It shows that Gulick still wants the load of cattle, still desires Blanchard to buy them for him as a customer, but says, "I cannot *conveniently* use any cattle *this week ;* " "I *prefer* to have you wait until next week, when I hope to be ready." But giving to this rather mild expression of a wish the full force claimed for it by the prosecution, the question remains whether there was evidence from which the jury were entitled to infer its receipt before the purchase of the cattle. Gulick says he mailed it on the 9th but cannot tell at what hour of the day ; that his custom was to mail such letters at the close of business for the day at about 6 or 7 o'clock. We may, therefore, presume that this letter was so mailed. It was proven that the mail in which the letter would naturally go west left Utica

at 1:20 the next morning, and reached Buffalo at 8 o'clock. A previous mail arriving at about midnight was regularly distributed in the morning, and the carriers for its free delivery left the office at 8 o'clock. They left, therefore, and started on their routes, just as the later mail arrived, and before it could be distributed. The carrier on Blanchard's route, who left the post-office at 8 o'clock in the morning, cannot be presumed to have had the letter in question. When the carrier again went over that route we do not know. So far, we can presume from the ordinary course of business that the letter was in the Buffalo office at 8 o'clock, and must also presume that it remained there until the carrier, who started out at 8 o'clock, had completed his route, returned to the office, and started out again for a second delivery. How many such deliveries there are in a day at Buffalo and at what hours we do not know. We have no facts on which to found a further presumption, and as it is conceded that Blanchard was at the cattle-yards making his purchases between 9 and 10 o'clock in the morning, and came two miles and a half in a cutter from his home, it is scarcely possible that he could have had this letter before leaving. The facts, therefore, do not warrant such an inference. On the contrary, the natural and just presumption to be drawn from them is that the letter did not reach defendant until after his purchase. To this must be added, in a criminal case, the presumption of innocence, not to be overcome by a mere chance or possibility, and the further fact of defendant's oath that he did not find the letter when he returned home after the purchase. We are of opinion, therefore, that the representations of fact as to the business relations existing between Gulick and the accused, and the statement that Gulick wanted him to buy eighteen cattle for him, were proved to be true.

But his further statement that he "wanted to buy eighteen cattle for Gulick;" that he was "buying them for Otto Gulick;" and that with the proceeds of such sale he would meet and pay his post-dated check was shown to be false; for he sent the cattle at once to Albany; sold them there at a reduced price,

and never paid his check given for the purchase. This brings us to the final question of the nature of this representation. It declares an intention and involves a promise. It states a present purpose and design to sell the cattle when bought to Gulick, and a promise to apply the proceeds resulting from such sale to the payment of the post-dated check. "I am buying for Gulick," "I want these cattle for Otto," could mean only that the defendant bought with a then present intention of sending them to Gulick. It was a statement of the design and motive of the accused in making the purchase. It represented what was at the time in his mind, and constituted his intention, and so far as it tended to affect or influence the seller it was essentially a promise, and related to the future. It was as if he had said, after stating the truth that Gulick wanted the cattle and stood ready to take and pay for them, that he would ship them to Gulick, and on receiving the price appropriate it to the payment of the check. So far as this intention and promise were concerned the seller necessarily took the risk of its fulfillment. He had to rely alone upon the supposed honesty and integrity of the defendant, and he was cheated not by any false statement of facts, but by reliance upon a promise and intention not meant to be fulfilled. If one sells property on credit, induced to do so by the purchaser's representation that he has a debt due him from a responsible debtor which will be paid before the expiration of the credit and which the purchaser will use to pay the seller, the latter consciously takes upon himself the risk of the promise although the facts stated are true. The debt referred to may exist and be paid in time, so that the purchaser has the very expected means of payment, but does not pay and never meant to. Here may have been a fraud but certainly no false pretense. In the present case the vendor put his confidence in two things: in the facts which made it possible for the buyer to get the means of payment, so as to be able to pay; and in his promise to honestly use the property to get the means, and then appropriate them to discharge his debt. Such protection as the facts could give the vendor got. The asserted means of procuring the money to meet the check in

fact existed, but the promise to use them and then to pay was broken, and the vendor suffered precisely at the point where he had to take the risk if he gave credit at all. We have found no case which holds that an indictment for false pretenses can be founded upon an assertion of an existing intention, although it did not in fact exist. POLLOCK, C. B., in *Archer's Case* (Dearsley's C. C. 453), describes the present case very nearly in his statement that "if a man says: 'I want goods for a certain house, and I mean to send them to that house; sell them to me;' that would not be a representation of an existing fact." Other authorities lead to the same conclusion. (2 Whart., § 2118; *West's Case*, 1 D. & B. C. C: 575; *Ranney* v. *People*, 22 N. Y. 417; *Reg.* v. *Bates*, 3 Cox's C. C. 201, 203; *Reg.* v. *Jennison*, 9 id. 158; *Rex* v. *Goodhall*, Russ. & Ry. 461; *People* v. *Tompkins*, 1 Park. Cr. 238.)

The prosecutor relies somewhat on the case of *Lesser* v. *The People* (73 N. Y. 78), but there a fact was falsely represented, that the maker of the post-dated check offered in payment had a business, and the check was good. Here, as we have seen, the facts stated were true, and only the intention and promise were false. It is sought to give these the appearance and force of a fact misrepresented by saying that Blanchard falsely asserted an existing *status*, a present relation; or, that he was then and there acting upon such business relation, whereas, in truth and in fact, he was not so acting. But the intent with which he acted is again the necessary test. If that was as he stated there was no falsehood anywhere; if it was not, that became the sole and only untruth, since whether he was acting upon the relation or outside of it depended upon nothing at the moment of the purchase, except his then present intention. With either design in his mind, his action and conduct up to the closing of the contract would have been the same, with no external or tangible difference. By an existing *status* or relation, the prosecutor must necessarily mean one which is compounded of the true facts and the false intention, and mingle the two in order to construct a representation of fact. But the falsity and the fraud are still in the intention

alone, and a conviction can rest upon nothing else, because every thing else was proved to be true. And this, we, think, must become quite evident when we consider upon what the vendor necessarily relied in giving credit. There were two risks apparent. Blanchard might be unable to pay or only unwilling to pay. He might fail to find a purchaser of the cattle or sell to one who was irresponsible, and so fail to pay for want of means. Against this risk the seller guarded himself by saying : " I want to know to whom these cattle are going." When told that it is Gulick who stands ready to take them, the seller was satisfied that the purchaser need not fail in payment for lack of ability to pay. But he took also another risk. He knew that the moment the sale was complete, Blanchard could sell to whom he pleased and for what price he pleased, and might, with the money in his pocket, refuse to pay. That was the risk of future action. It respected not an existing fact but one yet to arise, and as to that he was compelled to trust and did trust wholly to Blanchard's promise and his character as the sole guaranty of its fulfillment. The vendor, as we have said, was cheated precisely at that point ; not by a false pretense, but by a broken and fraudulent promise. We are of the opinion, therefore, that the conviction of the defendant upon the facts developed on the trial cannot be sustained.

The judgment of the General Term and of the Criminal Term of the Superior Court of Buffalo should be reversed and a new trial granted.

All concur, except ANDREWS, Ch. J.. and TRACY, J., not voting.

Judgment reversed.