THE STATE OF KANSAS v. CHARLES S. ALTEMUS.

No. 15,631. (92 Pac. 594.)

SYLLABUS BY THE COURT.

1. CRIMINAL LAW—*Kidnapping—Evidence of Defendant's Previous Conduct.* In a criminal prosecution for kidnapping, inveigling or decoying a person with intent to cause such person to be taken or sent out of the state against his will, the evidence as to the conduct of the defendant toward such person prior to the taking from the state should be confined to such acts as evince an intention to take or send the person out of the state against his will.

2. ——— *Erroneous Instruction.* An instruction ought not to be given, although it is a correct statement of the law in the abstract, which is not applicable to the facts that are in evidence. (*The State v. Whitaker*, 35 Kan. 731, 12 Pac. 106.)

Appeal from Chase district court; FREDERICK A. MECKEL, judge. Opinion filed November 9, 1907. Reversed.

*Fred S. Jackson,* attorney-general, and *Charles E. Davis,* county attorney, for The State; *Dennis Madden,* and *Dudley W. Doolittle,* of counsel.

*I. E. Lambert,* and *W. L. Huggins,* for appellant.

The opinion of the court was delivered by ·

SMITH, J.: The appellant was charged in the district court of Chase county with the crime of kidnapping Anna Pendergraft, an unmarried woman, with the intent to take her or cause ·her to be taken out of the state of Kansas against her will. He was tried and convicted, and upon the denial of his motion for a new trial was sentenced to the penitentiary. There are forty-four assignments of error, and it will be impracticable and unnecessary to consider them categorically. We shall confine our consideration rather to the legal principles which underlie them.

Over the reiterated objections of the appellant the state was allowed to detail the relations between the respective families of the prosecuting witness and the appellant, and especially to detail the relations between the appellant and the prosecuting witness for several years preceding the alleged abduction: how the appellant and his wife favored the girl and her younger brother, and took her with them on trips and to church; that he gave her presents; and finally the story of illicit sexual intercourse between them, continuing for a period of about three years. We have scanned the evidence carefully to discover an intimation or a circumstance indicating that he had any intention of taking Anna to California or elsewhere out of the state until after he had been informed that she was enceinte, and we have failed to find it. To escape the effects of this unintended result of their intercourse, evidently, was the impelling motive of the trip

to California. Whether, after an unsuccessful attempt to cause an abortion by taking medicine, she considered the humiliation and disgrace incident to remaining, and, as a choice of two evils, decided to go, or whether her will was overcome by his threats and she was thereby intimidated, beyond her power of resistence, to go, is a question for a jury and not for the court. Certain it is, however, that a jury in determining this question should not approach it with their minds poisoned against the appellant by a history of facts which, even though criminal in their nature, in no way tend to prove the crime charged.

We are not unmindful of the decisions of this court in the so-called "consent-does n't-count" rape cases, allowing proof of acts of intercourse at times other than that relied upon for conviction. This is allowed as corroborative of the evidence of the act charged, on the theory that it is common knowledge that the relation, once established, usually recurs when opportunity permits, and, *vice versa,* that opportunity confidently and successfully sought is some evidence of the former existence of the relation. The principle has no application to the case at bar. In this case substantially all the evidence of the relations of these parties prior to his being informed of her great trouble and his admission that he was the author thereof should have been excluded as irrelevant to the issue.

Our code of criminal procedure requires a specific statement of the crime charged in an indictment or information as the basis of a criminal prosecution, and on the trial of such charge no evidence should be permitted against the defendant except such as tends to establish a motive for, or complicity with, the offense charged. If it were permitted to offer against a defendant on trial evidence of every infraction of the law of which he may actually or supposedly have been guilty it would often be very difficult, if not impossible, for the average jury to surround him with the presumption of innocence or to give him the benefit of every reason-

able doubt until such presumption and doubt are removed by competent evidence of his guilt of the particular offense charged.   Yet the law accords to every defendant the benefit of this presumption and of such doubt.   Moreover, to defend an unknown number of charges when only apprised of one would impose an unjust burden upon a defendant.

The instructions aggravate the error in the admission of the evidence; *e. g.*, under the evidence the only "evil practice" to which those words in the fourth instruction could refer are the sexual intercourse and attempt by medicine to procure an abortion.   There is nothing in the evidence to indicate that the former was consummated as a part of a scheme to get her out of the state, while it is evident that the latter was for the very purpose of avoiding the necessity for such a trip. The sixth instruction, also, in effect, directs the jury to consider that portion of the evidence which should not have been introduced.   The last paragraph of this instruction is as follows:

"To support the charge of inveigling, decoying or kidnapping as charged, it will be sufficient to show a surrender or overcoming of the will of the said Anna Pendergraft by fraud, such as representations of facts known to be untrue by the defendant, and believed to be true by said Anna Pendergraft, and upon which her assent in whole or in part was obtained at the time of leaving her home; deception by words or conduct employed by the defendant for the purpose of obtaining her assent, and which operated in whole or in part upon her to secure such assent; undue influence, such as the abuse of a confidence by defendant reposed in him by said Anna Pendergraft, which operated to obtain her assent; the exciting of her fears by threats of a force reasonable to be apprehended which obtained her assent in whole or in part."

"Undue influence, such as the abuse of a confidence by defendant reposed in him by said Anna Pendergraft," could, it seems under the evidence, refer only

46—76 KAN.

to her evidence that he told her when in their illicit association that he would not get her into trouble. Can it be said that he told her this for the purpose of inducing or compelling her to go to California? We do not think the evidence by any possibility indicates this. That he falsely told her he had assigned to her an insurance policy on his life seems to be no greater inducement to go than to stay. The promise that he would get her a nice home and give her all the money she wanted to spend cannot be said to be a false representation. It was a promise which he may or may not have intended to keep. It was said in *Ranney v. People,* 22 N. Y. 413: "The false representation complained of was, therefore, essentially promissory in its nature, and this has never been held to be the foundation of a criminal charge." (Page 417.)

By the evidence of the prosecuting witness it appears that the appellant told her that the object of going to California was to get rid of the cause of their trouble, and called her attention to the disgrace and humiliation which would result to both of them and their families if they remained at home; also that she concluded it was the best thing to do. She also said, however, that he threatened to kill her if she did not go; that she believed he meant it, otherwise she would not have gone. If the jury believed this latter statement to be true, and that by such threats he so aroused her fears as to intimidate her and overcome her will, and thereby impelled her to consent to go when otherwise she would not have done so, then the offense of kidnapping is complete. Such intimidation is the equivalent of force.

It seems that the evidence does not justify any instruction in regard to inveigling or decoying. These elements of the crime are charged, but are not supported by any evidence. "An instruction ought not to be given, although it is a correct statement of the

law in the abstract, which is not applicable to the facts that are in evidence." (*The State v. Whitaker,* 35 Kan. 731 [syllabus], 12 Pac. 106. See, also, cases there cited, and *The State v. Mize,* 36 Kan. 187, 13 Pac. 1.)

The judgment is reversed.