The People *v.* Higbie.

---

————————•◆•————————

## THE PEOPLE *vs.* HIGBIE.

Requisites of an indictment for obtaining money by false pretences.

An indictment charged that the defendant, on, &c., at, &c., with intent to cheat and defraud the L. O. bank in a negotiation for a loan of, to wit, $10,000, did then and there feloniously, &c., pretend and represent to the cashier of said bank that the firm of which the defendant was a member were then owners of fourteen canal boats, all first-class, and four of them new, and all unincumbered; and that the entire indebtedness and liability of said firm was $25,100, to certain persons named. The indictment further charged that the cashier of said bank, believing said false pretences, and being deceived thereby, was induced by reason thereof, to loan and did loan, to wit, $10,000 of the moneys of said bank, to said firm; and that the defendant did designedly, &c., receive, borrow and obtain, from said bank, by means of said false pretences, and with intent feloniously to cheat and defraud said bank of said money. The indictment proceeded to negative the several representations, and alleged that the defendant knew them to be false, when he made them; and that by means thereof the defendant procured the said loan. *Held* that the indictment was sufficient in form; all the matters required by the statute, to constitute the offence, being clearly and distinctly charged therein.

*Held, also*, that the indictment was not defective because it did not appear, by it, that the bank was, or could have been, defrauded. That it was not necessary to allege that the firm for whom the defendant was acting were irresponsible.

*Held*, further, that it was sufficient to allege the value of the property obtained, under a *videlicet*.

A positive averment of value, in an indictment, is necessary only in those cases where value is an ingredient in the offence, as in grand and petit larceny.

MOTION to quash an indictment for obtaining money by false pretences, on the ground that it is not alleged, therein, that the firm of which the defendant was a member was insolvent.

*D. Pratt*, for the defendant.

*H. A. Foster*, for the people.

MULLIN, J.   The statute defining the crime of obtaining property by false pretences (3 *R. S.* 956, § 5, *5th ed.*,) reads as follows: "Every person who, with intent to cheat or defraud another, shall designedly, by color of any false token or writing, or by any other false pretence, obtain the signature of any person to any written instrument, or obtain from any person any money, personal property or valuable thing, upon conviction thereof, shall be punished," &c., &c.

To constitute the crime, then, four things must concur :·

1st. Property must be obtained.

2d. It must be obtained by some false token or pretence.

3d. It must be obtained with the intent to cheat or defraud.

4th. It must be done designedly.

The indictment in this case charges that the defendant, on, &c., at, &c., with intent feloniously to cheat and defraud the Lake Ontario Bank in a negotiation for a loan of, to wit, $10,000, did then and there feloniously, unlawfully, knowingly and designedly pretend and represent to the cashier of said bank that the firm of which the defendant was a member were then owners of fourteen canal boats ; that they were all first-class boats ; that four of them were new, having come out in 1859 ; that said firm had given no mortgages upon said boats, or any of them ; and that they were all unincumbered ; that no mortgage had ever been upon any boat of the said firm ; that the entire amount of the indebtedness and liability of said firm was $25,100, to certain persons named.   The indictment further charged that the cashier of said bank, having authority to loan the moneys of said bank, believing said false pretences, and being de-

The People *v.* Higbie.

ceived thereby, was induced by reason thereof to loan, and did loan, to wit, $10,000 of the moneys of said bank, to said firm, and that said Higbie did designedly, feloniously, unlawfully, falsely and knowingly receive, borrow and obtain for said firm, from said bank, the sum of, to wit, $10,000, the property of said bank, by means of said false pretences, and with intent feloniously to cheat and defraud said bank of said money. The indictment proceeds to negative the several representations, and alleges that the defendant knew them to be false, when he made them; and that by means thereof said defendant procured the said loan.

All the matters required by the statute, to constitute the offence, are clearly and distinctly charged in this indictment, and if any other averments are necessary, in order to make a valid indictment, it must be by reason of the decisions of the courts giving construction to the statute, or by reason of some rule of the common law, which controls the form of the indictment.

The crime of obtaining money by pretences such as are declared criminal by our statute, was unknown at common law. (3 *Chitty's Cr. Law*, 994. *People* v. *Babcock*, 7 *John*. 201. *People* v. *Miller*, 14 *id*. 371. *People* v. *Stone*, 9 *Wend*. 182.)

When the offence is created by statute, as a general rule an indictment is sufficient which describes the offence in the language of the statute. (*People* v. *Taylor*, 3 *Denio*, 91.)

*Chitty* in his *Criminal Law* (*vol*. 3, *p*. 999,) lays down the following requisites of an indictment under the English statutes, which are substantially the same as ours: 1st. The false pretences must be set forth with great accuracy. 2d. The intent to cheat should be stated in every material part of the indictment. 3d. The property which the defendant obtained should be stated accurately. 4th. The owner of the property obtained

should be accurately described.    5th. The pretences must be negatived.

*Barbour*, in his *Criminal Law* (*p.* 132,) adopts the same rules.    (*See also Archbold's Criminal Pleadings*, 275, &c.)    Indeed all the precedents in the books conform to the foregoing rules.    (*Whart. Crim. Law*, 639, &c.)

It seems to me that the indictment in this case conforms to the statute; and to the precedents which have been adopted under it, or under others substantially like it, and which have been long in use and recognized as valid and sufficient.

It is insisted, by the defendant's counsel, that the indictment is defective because it does not appear, by it, that the bank was or could have been defrauded.    The allegations, if true, do not show the firm responsible, and if false, do not show it irresponsible.    By this proposition I understand the counsel to insist that it should be alleged, in the indictment, that the person from whom the property was obtained was defrauded, or such facts and circumstances should be alleged as to show that the act done by the defendant necessarily tended to defraud him.    In this, I think, the counsel is mistaken.    The statute offence is complete when the accused has obtained the property of another designedly, with intent to defraud him.    The crime is complete when the property is obtained; and it is not necessary to wait, a moment, to see whether the party from whom the property is obtained will be defrauded.

When property is obtained on credit, by false and fraudulent representations, how could it be ascertained, until the credit had expired, whether the debt would or would not be paid?    In such cases, criminal responsibility must depend on the ultimate payment or nonpayment of the debt.    The statute has established no such test, nor prescribed any such condition of liability.

The object of the statute under consideration was to

The People *v*. Higbie.

enforce the observance of good faith in business—to compel each party to a contract, if he makes representations which are calculated to induce the other to put confidence in them and to part with his property, relying upon their truth, to be sure they are true; and if not true, and they were designed to cheat the other, he should be instantly liable to indictment and punishment for such false and fraudulent representations.

In order to ascertain whether the accused is liable, we have only to ascertain, *first*, whether he made representations which were calculated to induce a prudent man, relying upon them, to part with his property; *second*, whether the injured party did part with his property, relying on them; *third*, whether such representations were false and known to be so, to the person making them; and, *fifth*, whether the accused designed to cheat and defraud.

The question of the responsibility of the firm for which the defendant was acting was no more essential, in this case, than was the responsibility of Herrick, in *The People* v. *Herrick*, (13 *Wend.* 87.) In that case the prisoner had obtained the signature of the complainant to a promissory note by the false pretense that he had money in the hands of one Squier. The inquiry was made of the complainant, on the trial, what his reasons were for not considering the prisoner responsible, when the note was given. This was objected to, by the prisoner's counsel, and the chief justice, in delivering the opinion of the court, says: "The important facts were, whether a false representation was made, and whether the witness, relying upon it, signed the note. If the signature to the note had been obtained by any other means than the false representation, then this offence was not committed. If the witness had relied not upon the representation of the money in Squier's hands, but upon anything else, as upon the prisoner's general responsibility, then the defendant was not guilty."

In that case the inquiry as to the prisoner's responsibility was gone into. In regard to it, the learned justice says: "The object of this evidence could be no other than to create a belief that the witness relied upon the prisoner's general responsibility, and not upon the particular fund supposed to be in the hands of Squier."

The solvency or insolvency of the prisoner, then, has nothing to do with the offence, unless the representation is in relation to responsibility. And as no allegation on that subject is necessary, or proper, the defrauding the party injured, mentioned in the statute, must relate to something besides the want of ability of the prisoner or other person to pay for the property.

In the case last cited, the same learned justice shows what it is necessary to prove in order to establish the fraudulent intent mentioned in the statute. He says, (page 91:) "It was true that the testimony of N. Herrick sustained the indictment. It was also correct to say that the proof of the false representation was sufficient evidence of a fraudulent intent; the latter was the natural and legal consequence of the former. The intent is inferred from the fact; and if it was possible that there could be a false representation with an innocent intent, the defendant should have shown it."

It seems to me, therefore, that it was not necessary to allege or show, in the indictment, the mode or manner in which the bank might or could be defrauded, otherwise than by alleging that the defendant made representations which were calculated to deceive a prudent man, and that such representations were false, and known to be so when made, and that the property was parted with upon the strength of them.

It is said that the value of the canal boats is not alleged, and it does not appear, therefore, whether the cashier relied upon them as the basis of credit. They may have been worth but a small sum, and hence, even if unincumbered, not security for the loan, which any

The People *v.* Higbie.

prudent man should rely upon. To this I answer, that the question is not whether the cashier relied solely on the representation, but whether it had an influence in inducing the credit.

Again, the question is not whether the representation was such as to induce credit from a very careful man, but whether it was such as would influence a prudent and careful man; not whether the representations, if scanned and scrutinized, might not excite the suspicions of one searching for defects in them, but whether they were calculated to impose upon a prudent business man.

If a representation is made to a merchant in New York by one residing, or pretending to reside, in Syracuse, that he is the owner, in that city, of five stores free from incumbrances, and the former sells the latter goods, is he guilty of weakness or folly in assuming that five stores are of some considerable value and would form the basis of credit to a considerable amount? It seems to me that any man to whom it was represented, by another, that he was the owner of fifteen unincumbered canal boats had the right to infer that they were of value; and for the purposes of the question it is immaterial how great the value of the boats might be. The representation was calculated to impose upon the cashier; it is averred that he relied upon it; that it was false, and the bank has been cheated. This is enough.

The representation made was that the boats were unincumbered; it is not true. Whether or not the bank is no worse off, by reason of the mortgages, is not the question. Unincumbered property is worth more than incumbered; the boats were not unincumbered; the law presumes the fraudulent intent, which is the essence of the crime.

Can it be possible that the public prosecutor must, in his indictment, aver and show how the party is injured by each and all of the representations which are alleged

to be false? That he must show, in this case, that each mortgage was duly executed, delivered, filed and recorded so as to make them valid liens on the property? If so, it is more of a task to prepare an indictment, in cases of false pretences, than has been supposed. Whether or not it will be incumbent on the public prosecutor to prove the mortgages to have been filed and recorded, it is not necessary to decide; but I am quite clear there is no rule of criminal pleading which requires the district attorney to do more than to allege that the property was incumbered by mortgages.

I have already said all that I deem it necessary to say as to the necessity of alleging that the firm were or were not responsible. No representation was made on that subject; it forms no element of the crime, and all allegations in relation to it would be irrelevant and improper.

I can find no authority which requires that all the representations upon which it is averred the cashier relied should be negatived. Such a rule would exclude from punishment all those who should incorporate a single truth with the falsehoods by which the injured party was defrauded.

It is urged that the amount of money obtained should have been positively alleged; that it is not sufficient to state it under a *videlicet*. In *The People* v. *Stetson*, (4 *Barb*. 151,) the defendant was indicted for obtaining from the complainant a silver watch by false pretences. The value of the watch was not alleged. The only averment was that it was a valuable thing; and the court held that it was not necessary to allege that the property was of any particular value. A positive averment is only necessary, in those cases where value is an ingredient in the offence, as in grand and petit larceny. When the value must be positively averred, the *videlicet* will not relieve the prosecutor from making such proof; nor will its absence make it necessary to prove the value

to be the amount alleged, when it would not be neces-sary if the *videlicet* had been used. (1 *Chitty's Crim. Law*, 226–7.)

For these reasons, I think the indictment is sufficient in form; and the motion to quash must be denied.

ALLEN, J., concurred.

MORGAN, J., dissented.

Motion denied.

[ONONDAGA GENERAL TERM, January 1, 1861. *Allen, Mullin* and *Morgan,* Justices.]