THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.* JAMES E. OSTRANDER, Respondent.

*Savings bank — verification of a false report by its treasurer — indictment for perjury.*

James E. Ostrander, treasurer of the Ulster County Savings Institution, was indicted for perjury alleged to have been committed in his falsely verifying a semi-annual report of that institution, made pursuant to sections 270, 271 and 272 of chapter 409 of the Laws of 1882, which was required to contain a statement of the assets and liabilities of the institution.

Section 279 of the act of 1882 requires the trustees to examine, semi-annually, the books, vouchers, assets and affairs generally of the bank; and provides as follows: "And the statement or schedule of assets and liabilities reported to the superintendent of the banking department for the first of January and July in each year shall be based upon such examination, and shall be verified by the oath of a majority of the trustees making such examination."

Section 273 provides that "such report shall be verified by the oath of the two principal officers of the institution, and the statement of assets shall be verified by the oath of a majority of the trustees who examined the same, pursuant to the requirements of section 279 of this act."

The defendant demurred to the indictment.

*Held,* that, under sections 273 and 279, a principal officer of the bank, such as Ostrander, was compelled to verify the entire report.

That the position that the statute, in effect, only required the principal officer to make oath that the result of the examination as made by the trustees was correctly stated, was untenable.

That the examination required by section 279 was a different matter from the report required by sections 270, 271 and 272.

That, although by section 279 the report, made under section 270, is to be "based upon" the examination of the trustees, this did not justify a principal officer in charge of the bank in verifying the report as to the condition of the bank, when he knew of his own knowledge that the condition of the bank was incorrectly stated in such report.

That if Ostrander knowingly swore that the liabilities of the bank aggregated a certain sum or amount, when he knew them to be another and different amount, he was, under section 273, guilty of perjury.

That it was not necessary to set out in the indictment the whole affidavit which was claimed to constitute the perjury, nor was it necessary that the affidavit of verification should embody in itself, otherwise than by a reference to the report containing them, the facts alleged to be false.

That a statement in an indictment that the liabilities were a much larger sum than that stated in the report was sufficient, the amount of the excess not being material to the crime.

APPEAL by the plaintiff, the People of the State of New York, from a judgment of the Ulster Oyer and Terminer, rendered on the 12th day of April, 1892, allowing the defendant's demurrer to an indictment for perjury.

*J. N. Vanderlyn* and *A. Schoonmaker*, for the appellant.

*William Lounsberry* and *D. M. De Witt*, for the respondent.

PUTNAM, J.:

The defendant was indicted for perjury claimed to have been committed in making a false verification to the semi-annual report of the Ulster County Savings Institution rendered to the superintendent of the banking department of the State of New York on July 29, 1890. A demurrer interposed by defendant, on the grounds that the indictment does not conform to the requirements of sections 275 and 276 of the Code of Criminal Procedure, and also that the facts stated do not constitute a crime, was sustained at the Oyer and Terminer and judgment ordered for the defendant, from which this appeal is taken.

By section 270, chapter 409 of the Laws of 1882, savings banks, such as the Ulster County Savings Institution, are required, on or before the first days of February and August in each year, to make a report in writing to the superintendent of the banking department of its condition on the mornings of the first days of January and July preceding. Sections 271 and 272 prescribe the contents of such report. That it shall contain, among other things, a statement of assets and how invested, and also a statement of the liabilities of the corporation, amount due depositors and other facts. Section 273 provides for the verification of said report as follows:

" Such report shall be verified by the oath of the two principal officers of the institution, and the statement of assets shall be verified by the oath of a majority of the trustees who examined the same, pursuant to the requirements of section 279 of this act."

The defendant was the treasurer of said corporation and made the affidavit required by section 273 on July 29, 1890, to the report then made by said bank, in pursuance of the provisions of sections 270, 271 and 273. This affidavit is the one mentioned in said indictment. It is clear that the defendant at the time was one of the

principal officers of the bank, within the meaning of the statute, and a proper party to make said affidavit.

The act of 1882, section 279, also provides that the trustees of every savings institution shall, on or before the first day of January and July in each year, thoroughly examine the books, vouchers and assets of such savings institution and its affairs generally, and that the statement or schedule of assets and liabilities reported to the superintendent of the banking department for the first day of January and July in each year shall be based upon such examination and shall be verified by the oath of a majority of the trustees making it.

At the Oyer and Terminer it was held by the court that, under the provisions of sections 273 and 279, the principal officers of the bank were not called upon or authorized in the making of the report to the superintendent of the banking department to verify such report as to the assets or liabilities of the bank. That the report of said officers, as made to the superintendent of the banking department, was based upon the report made by the committee of the trustees, and hence that perjury cannot be predicated upon an affidavit made by defendant as to the assets and liabilities of the bank, which he was not bound under the statute to make. That the oath of the defendant set out in the indictment was extra-judicial, the act only requiring the defendant to make oath that the statement of liabilities and amount due depositors was correct according to the finding of the committee of the trustees.

It is to be regretted if this is a correct construction of the act of 1882. If so, officers of a savings bank like defendant, who, in fact, control its affairs, and have the charge and management of its books and vouchers, obtaining a report from a committee of its trustees on such books, vouchers and papers as such officers choose to submit to such committee, can swear to such a report, although knowing it to be a false one, without being guilty of perjury.

I am unable to agree with such an interpretation of the statute. I think that the very language of section 273 requires the principal officers of the bank to verify the entire report. Sections 270–272 (*supra*) provide for the making of the report and what it shall contain, and then section 273 enacts that the said report shall be veri-

fied by the two principal officers of the bank. The statute does not say that *a part* of the report shall be verified, but provides that "*such report shall be verified.*" This, I understand, means all the report.

There is nothing in the provisions of section 279 inconsistent with those of section 273. The latter section, as I construe it, requires the oath of the officers to the whole report, and sections 273 and 279 together require the affidavit of a majority of the committee of the trustees to the statement of the assets and liabilities. It is true that the report made and sworn to by the officers of the bank and its trustees is based upon the examination made in pursuance of section 279. Although based upon such examination the statute prescribes that it *shall be sworn to by the officers — the whole of it.* The language of section 273 is significant. While providing that *the report* generally shall be verified by the oath of two of the principal officers, it specifies what part of the report shall be verified by the oath of the trustees — the statement of assets and liabilities. So, had it been the intention of the law makers that the principal officers should only verify *a* portion of the report, the statute would doubtless have stated what part said officers should make oath to.

Although the report so made, under section 279 (*supra*) is based on the examination of the trustees, if the defendant, as alleged in the indictment, knowing said report to be false, willfully and corruptly made a false affidavit verifying it, I think this is perjury under the Penal Code. Should a case arise where the examination of the trustees of the bank did not show the correct amount of assets or liabilities and the true sum due depositors, to the knowledge of the officers, the latter would not be compelled to verify the report known by them to be false. In such a case a special affidavit could be drawn to meet the difficulty.

On the trial of the case, if it should appear that the defendant relied upon the examination of the trustees and verified the semi-annual report in good faith upon their statement, although the report proves to be false in fact, he would be entitled to an acquittal. But if it should be shown that the report submitted by the bank to the superintendent of the banking department, as alleged in the indictment, was false in fact, and the defendant, while knowing it to be so false, made an affidavit of its correctness, he could be properly

convicted of perjury under the statute. The evident intent of the statute is to provide for the verification of the report by the principal officers of the bank, who know best as to its condition, and also for a semi-annual examination of the affairs of the institution by its trustees, evidenced to the superintendent of the banking department by the affidavit of the committee of such trustees attached to the semi-annual report.

I conclude that the oath of the defendant to the semi-annual report of the Ulster County Savings Institution, as alleged in the indictment, was not extra-judicial, but was an affidavit required by the plain terms of section 273 of the act of 1882, and that hence, if the allegations in the indictment are true, that the defendant can be held for perjury.

There are other objections made by the defendant to the indictment which the justice holding the Oyer and Terminer did not consider, and which I do not think it necessary to discuss at length.

It is claimed by the defendant that the indictment is fatally defective, in that it fails to aver that the defendant swore that the affidavit subscribed by him was true — it (the affidavit) only stating that the statements contained in the report were correct. This position of defendant is a novel one, and I think not well taken.

Section 96 of the Penal Code provides: "A person who swears * * * or states in his testimony, declaration, deposition, affidavit or certificate any material matter to be true which he knows to be false is guilty of perjury." In the indictment the report to the superintendent of the banking department is alleged to have stated the liabilities of the Ulster County Savings Institution at a certain sum, and that this was sworn to by defendant as correct. Such statement was in fact false, and defendant knowing that the said allegation was false and that the liabilities of said bank and the amount due depositors was much larger than that stated in said report verified, etc. That was an allegation, as stated in the indictment, by the defendant in his affidavit of the truth of the facts stated in the report known by him to be false, and seems to come within the definition of perjury as defined in section 96 (supra).

To constitute perjury under said section it is not necessary in an affidavit of verification itself to state the facts sworn to. The facts

sworn to may be stated in the report or pleading to which said affidavit is annexed or attached. Such report or pleading and affidavit of verification forming, in fact, one paper. It is immaterial whether the facts sworn to are set out in the affidavit or in the paper annexed, of which the affidavit may be deemed a part.

In my judgment, the statement in the indictment that the liabilities were a much larger sum than the amount mentioned in the report is sufficient. It is not necessary to state the amount of liabilities in excess of the amount reported. It is not a case where the amount of such excess is material.

I have read the indictment with some care, and it seems to me to be carefully drawn and to comply with the requirements of the Code of Criminal Procedure. (See §§ 275, 284, 285, 291; *People* v. *Clements*, 11 N. Y. State Rep., 384, 385; *People* v. *Higbie*, 66 Barb., 138; *People* v. *Dimick*, 107 N. Y., 29, 30.)

The judgment allowing the demurrer should be reversed and the demurrer disallowed, with liberty to defendant to plead to the indictment.

The same disposition should be made of the other case of the *People* v. *James H. Ostrander* and that of the *People* v. *Matthew T. Trumpbour*.

HERRICK, J.:

This is an appeal from a judgment of the court below sustaining a demurrer to the indictment herein. Sections 275, 276, 284 and 285 of the Code of Criminal Procedure provide the tests for determining the sufficiency of an indictment.

"It must contain a plain and concise statement of the act constituting the crime, without unnecessary repetition, and it is sufficient if the act charged as the crime is plainly and concisely set forth with such a degree of certainty as to enable the court to pronounce judgment upon a conviction according to the right of the case; and no indictment is insufficient by reason of any imperfection in matter of form, which does not tend to the prejudice of the substantial rights of the defendant upon the merits." (*People* v. *Dimick*, 107 N. Y., 13–29; *People* v. *Weldon*, 111 id., 575.)

It should also set forth the act or acts charged to constitute the crime with sufficient definiteness and precision that the defendant

may avail himself of it as a plea in bar, if he is charged with the same offense or any offense constituted by the same act a second time.

Tested by these requirements, it seems to me that the indictment is good in form, and that the acts constituting the alleged crime are well pleaded.

Do the facts alleged constitute the crime of perjury? It is alleged that at the time of the acts charged in the indictment the " Ulster County Savings Institution" was an incorporated savings bank and institution for savings, duly incorporated and existing under the laws of the State of New York, and that the defendant was one of its two principal officers. The law governing savings banks is contained in chapter 409 of the Laws of 1882.

Section 270 of that act directs such corporations to make semi-annual reports on or before February first and August first, of its condition on the mornings of the first days of January and July preceding.

Sections 271 and 272 prescribe the contents of such report.

Section 272 reads in part as follows: " Such report shall also state all the liabilities of such savings corporation on the morning of the said first day of January; the amount due to depositors, which shall include any dividend to be credited to them for the six months ending on that day, and any other debts or claims against such corporation which are or may be a charge upon its assets."

It is provided by section 273 that " such report shall be verified by the oath of the two principal officers of the institution and the statement of assets shall be verified by the oath of a majority of the trustees who examined the same pursuant to the require-ments of section 279 of this act;" and it further provides that any willful false swearing, in regard to such reports, shall be perjury. Section 279 reads as follows: " It shall be the duty of the trustees of every savings bank, by a committee of not less than three of such trustees, on or before the first day of January and July in each year, to thoroughly examine the books, vouchers and assets of such savings bank and its affairs generally; and the statement or schedule of assets and liabilities reported to the superintendent of the banking department for the first of January and July in each year shall be based upon such examination, and shall be verified by the oath of a majority of the trustees making such examination."

The provisions of this last section, when read in connection with the other first referred to, are what have given rise to the contention now before the court.

It is claimed that, inasmuch as section 279 says that the report of the statement or schedule provided for by section 270 shall be *based* upon the examination directed to be made by the trustees, that the verification to the report is simply a statement that it is a correct report of the examination made by the trustees, and that any other affidavit is extra-judicial, and that a charge of perjury cannot be predicated upon it ; and, again, it is contended that the affidavit shall be that the report filed was correct, as based upon the examination of the trustees, and that any other affidavit would be extra-judicial. In other words, that the verification of the principal officers is to a report, not as to what is the true condition of the corporation, but that the report correctly sets forth the examination of the trustees. To me it seems that reading the statute, bearing in mind its intention, will solve all difficulty ; the court will not be curious to find or force a construction that opens the way to dishonesty or a loose way of transacting business ; the law must be so construed, if possible, as to enforce its intent, and that intent must not be defeated by refinements or subtleties in construction. The legislature evidently intended that, at least twice a year, the banking department should be informed of the exact condition of the savings institutions of the State. For that purpose it required an examination by the trustees Next it required a report to be verified by the principal officers of the bank, and, as to the statement of its assets and liabilities, also by the affidavits of a majority of the trustees making the examination. The statute is particular in stating what the report shall contain ; it shall state all the liabilities of the bank ; it shall state the amount due depositors. And the report containing these things shall be verified by the oath of the two principal officers. They are to swear to the truth of that report, not to the truth of the report made by the trustees, nor is the report to state that it contains what the trustees found on their examination, but the report is to set forth what, in truth and fact, the real condition of the bank is, not what somebody else says it is ; not what it is as appears from the examination made by the trustees ; the bank department is to be informed of its true condition as known by its principal officers. The report

provided for by sections 270, 271 and 272 is different from the examination provided for by section 279. One is a check upon the other.

It is true that section 279 says that the statement or schedule of assets reported, as provided for in section 270, shall be based upon the examination required by section 279, but that certainly does not mean that the principal officers are simply to report what the trustees found upon their examination, and that the banking department is not to have the benefit of the knowledge of the officers who, in fact, conduct the every-day business of the bank, but only the knowledge acquired by a committee of trustees who have examined the records of the business kept by those officers.

Such a construction would lead to this, that the principal officer could make his report, saying in it, or in the affidavit by which he verified it, that it was correct as based upon the examination of the trustees, and he could not be indicted for perjury, although he knew that such examination did not disclose the true condition of the bank, and knew that it was, in fact, false.

Having the books of the bank under his control, in most instances keeping them, he could falsify them so that, upon examination by the trustees, they would not discover the true condition of the bank; and he could truthfully swear that the report was based upon the examination of the trustees. When the statute says the statement or schedule of assets and liabilities reported shall be based upon such examination, it means that the report is to be something separate and apart from the statement of the result of the examination by the trustees; the result or statement of such examination is like the search furnished by the searcher to the pains-taking conveyancer, it simply furnishes him the basis for his own examination; he takes it and goes to the records and verifies it himself from those records before he certifies it as correct under his own hand.

This examination is also a basis for the report in another aspect; in addition to the report being verified by the two principal officers, its statement of assets and liabilities is also to be sworn to by the majority of the trustees making the examination required by section 279; of course, their examination gives them the knowledge — is the basis of their information — as to whether such statements are correct or not.

The contention of the defendant's counsel, in substance, amounts to this : That the examination by the trustees, and their statement thereof, is, as to the two principal officers, *res adjudicata* as to the creditors of the bank ; that their report must state that it is based upon such examination, and any other report is not called for by the statute, is extra-judicial, and perjury cannot be predicated upon it ; that if the report is correctly based upon the examination and verified schedules made by the trustees, then they commit no perjury, although such verified schedules are, in fact, false, and do not represent, but misrepresent, the true condition of the bank.

That if they make a report stating the schedule different from the one prepared and verified by the trustees, and verify it by their oaths, that then they would be guilty of perjury, although their report gave the true condition of the bank, and the schedule verified by the trustees did not.   It seems to me that the mere statement of the construction contended for is a sufficient answer to it.   A construction which will permit the officers of a bank to file and swear to a report which they know to be false and escape all liability therefor, simply because it is based upon an examination and report made by other officers, cannot possibly be what the legislature intended.   The statute says that the corporation shall make a report in writing at a specified time to the superintendent of the banking department of its condition.   The indictment says such a report was made.   The statute says such report shall state all the liabilities of the corporation, and also the amount due depositors.   The indictment says that the report purported to set forth and declare the whole amount due depositors, and specifies the amount the report indicated and declared was due depositors.   The statute says such report shall be verified by the oath of the two principal officers of the bank.   The indictment says that the defendant is one of the two principal officers of the bank, and, in proper form, alleges that he verified, by his oath, the said report.   The statute also says that any willful false swearing in regard to such, or in regard to *any* reports made to the superintendent of the banking department, pursuant to the provisions of such act, shall be deemed perjury.   The indictment charges that the defendant willfully swore that such report was, in respect to the statement of the liabilities, in all respects, correct, to the best of his knowledge and belief, and showed the true

condition of the bank, when, in truth and in fact, it was not, in all respects, correct to the best of his knowledge and belief, as he well knew, and charges that this statement of the amount due depositors was not the same set forth in the report, but was a much larger sum, as the defendant well knew. These matters being set forth in the proper legal form and verbiage as they are in this indictment, are sufficient. The oath is alleged to have been taken before an officer duly authorized to administer oaths, his name and office are given in the indictment. It was not necessary to set forth in full the affidavit by which he verified the report. All that is necessary is to set forth its substance and effect. (Code of Crim. Pro., § 291; *People* v. *Warner*, 5 Wend., 271; Wharton's Criminal Law [9th ed.], § 1298.) The indictment sets forth the amount stated in the report to be due depositors, and then proceeds to state that such sum was not the amount due creditors, but that, in fact, the amount due creditors was a much larger sum.

It was not necessary to specify in the indictment how much larger that sum was; all that was necessary was to negative the truth of the alleged fact or statement upon which the charge of perjury is predicated. It is not like a case of larceny where the grade of the offense depends upon the value of the thing taken.

Some stress has been laid upon the fact that in section 273 it says that the statement of *assets*, shall be verified by the oath of the trustees, while in section 279 it provides that the schedule or statements of *assets and liabilities* shall be verified by the trustees. If this indictment was against the trustees so verifying the report, the questions raised upon these differences in the two sections might be of some consequence, but I do not see how they can be in this case. Assuming that the verification or oath of the trustees is defective, I cannot see how that affects the defendant; the oath or verification of the officers and of the trustees are separate and distinct affairs, the one is as to the whole report, the other is as to certain statements in the report. If one is wrong in form, is extra-judicial, or in any way defective, that does not in any way affect the other.

However defective the report or affidavit may be in other respects, if, in making it out, the defendant has willfully, knowingly sworn that the liabilities of the bank, the amount due depositors, was a

certain sum or amount, when, in truth and in fact, it was another and different sum or amount, and he knew it, then he is guilty of perjury.

For these reasons I think the court below erred in sustaining the demurrer to the indictment, and that the judgment of the Court of Oyer and Terminer allowing the demurrer to the indictment should be reversed.

MAYHAM, P. J., not sitting.

Judgment reversed, demurrer disallowed, with liberty to defendant to plead over.