PEOPLE v. OSTRANDER.

(*Supreme Court, General Term, Third Department.* June 1, 1892.)

1. PERJURY—FALSE REPORT BY OFFICER OF SAVINGS BANK.
     An indictment against an officer of a bank for perjury in falsely making affidavit
     to the truth of a report of the bank's condition need not set forth the affidavit in
     full, but under Code Crim. Proc. § 291, it is sufficient to set forth its substance and
     effect.

2. SAME—INDICTMENT.
     On indictment against an officer of a bank for perjury in falsely making affidavit
     to the truth of a report of the bank's condition, defendant cannot object that the
     affidavits of other persons to the report are defective, and therefore extrajudicial,
     so long as his own affidavit was in compliance with the statute.

Appeal from court of oyer and terminer, Ulster county.

Indictment against James E. Ostrander for perjury. From a judgment
sustaining a demurrer to the indictment, the people appeal. Reversed.

Argued before PUTNAM and HERRICK, JJ.

*J. N. Vanderlyn* and *A. Schoonmaker,* for the People. *William Louns-
bery* and *D. M. De Witt,* for respondent.

HERRICK, J. This is an appeal from a judgment of the court below sustain-
ing a demurrer to the indictment herein. Code Crim. Proc. §§ 275, 276, 284,
and 285, provide the tests for determining the sufficiency of an indictment. "It
must contain a plain and concise statement of the act constituting the crime,
without unnecessary repetition, and it is sufficient if the act charged as the
crime is plainly set forth with such a degree of certainty as to enable the court
to pronounce judgment upon a conviction, according to the right of the case;
and no indictment is insufficient, by reason of any imperfection in matter of
form, which does not tend to the prejudice of the substantial rights of the de-
fendant upon the merits." *People* v. *Dimick,* 107 N. Y. 13, 29, 14 N. E.
Rep. 178; *People* v. *Weldon,* 111 N. Y. 575, 19 N. E. Rep. 279. It should
also set forth the act or acts charged to constitute the crime with sufficient
definiteness and precision, that the defendant may avail himself of it as a plea
in bar, if he is charged with the same offense, or any offense constituted by
the same act, a second time. Tested by these requirements, it seems to me
that the indictment is good in form, and that the acts constituting the alleged
crime are well pleaded.

Do the facts alleged constitute the crime of perjury? It is alleged that at
the time of the acts charged in the indictment the Ulster County Savings In-
stitution was an incorporated savings bank and institution for savings, duly
incorporated and existing under the laws of the state of New York, and that
the defendant was one of its two principal officers. The law governing sav-
ings banks is contained in chapter 409 of the Laws of 1882. Section 270 of
that act directs such corporations to make semiannual reports on or before
February 1st and August 1st of its condition on the mornings of the 1st days
of January and July preceding. Sections 271 and 272 prescribe the contents
of such report. Section 272 reads in part as follows: "Such report shall also
state all the liabilities of such savings corporation on the morning of the said
1st day of January; the amount due to depositors, which shall include any
dividend to be credited to them for the six months ending on that day, and
any other debts or claims against such corporation which are or may be a
charge upon its assets." It is provided by section 273 that "such report shall
be verified by the oath of the two principal officers of the institution, and the
statement of assets shall be verified by the oath of a majority of the trustees
who examined the same pursuant to the requirements of section 279 of this
act;" and it further provides that any willful false swearing in regard to such
reports shall be perjury. Section 279 reads as follows: "It shall be the duty
of the trustees of every savings bank, by a committee of not less than three

of such trustees, on or before the first day of January and July in each year, to thoroughly examine the books, vouchers, and assets of such savings bank and its affairs generally; and the statement or schedule of assets and liabilities reported to the superintendent of the banking department for the first of January and July in each year shall be based upon such examination, and shall be verified by the oath of a majority of the trustees making such examination." The provisions of this last section, when read in connection with the other first referred to, are what have given rise to the contention now before the court.

It is claimed that inasmuch as section 279 says that the report of the statement or schedule provided for by section 270 shall be based upon the examination directed to be made by the trustees, the verification to the report is simply a statement that it is a correct report of the examination made by the trustees, and that any other affidavit is extrajudicial, and that a charge of perjury cannot be predicated upon it; and again it is contended that the affidavit shall be that the report filed was correct, as based upon the examination of the trustees, and that any other affidavit would be extrajudicial; in other words, that the verification of the principal officers is to a report, not as to what is the true condition of the corporation, but that the report correctly sets forth the examination of the trustees. To me it seems that reading the statute, bearing in mind its intention, will solve all difficulty. The court will not be curious to find or force a construction that opens the way to dishonesty or a loose way of transacting business. The law must be so construed, if possible, as to enforce its intent, and that intent must not be defeated by refinements or subtleties in construction. The legislature evidently intended that at least twice a year the banking department should be informed of the exact condition of the savings institution of the state. For that purpose it required an examination by the trustees. Next it required a report to be verified by the principal officers of the bank, and, as to the statement of its assets and liabilities, also by the affidavits of a majority of the trustees making the examination. The statute is particular in stating what the report shall contain; it shall state all the liabilities of the bank; it shall state the amount due depositors; and the report containing these things shall be verified by the oath of the two principal officers. They are to swear to the truth of that report, not to the truth of the report made by the trustees, nor is the report to state that it contains what the trustees found on their examination; but the report is to set forth what, in truth and fact, the real condition of the bank is, not what somebody else says it is, not what it is as appears from the examination made by the trustees. The bank department is to be informed of its true condition, as known by its principal officers. The report provided for by sections 270, 271, and 272 is different from the examination provided for by section 279. One is a check upon the other. It is true that section 279 says that the statement or schedule of assets reported, as provided for in section 270, shall be based upon the examination required by section 279, but that certainly does not mean that the principal officers are simply to report what the trustees found upon their examination, and that the banking department is not to have the benefit of the knowledge of the officers who in fact conduct the every-day business of the bank, but only the knowledge acquired by a committee of trustees who have examined the records of the business kept by those officers. Such a construction would lead to this: that the principal officer could make his report, saying in it, or in the affidavit by which he verified it, that it was correct as based upon the examination of the trustees; and he could not be indicted for perjury, although he knew that such examination did not disclose the true condition of the bank, and knew that it was in fact false. Having the books of the bank under his control, in most instances keeping them, he could falsify them so that, upon an examination by the trustees, they would not discover the true condition of the bank, and he could truth-

fully swear that the report was based upon the examination of the trustees. When the statute says the statement or schedule of assets and liabilities shall be based upon such examination, it means that the report is to be something separate, and reported apart from the statement of the result of the examination by the trustees. The result or statement of such examination is like the search furnished by the searcher to the painstaking conveyancer. It simply furnishes him the basis of his own examination. He takes it, and goes to the records, and verifies it himself from those records, before he certifies it as correct under his own hand.

This examination is also a basis for the report in another aspect. In addition to the report being verified by the two principal officers, its statement of assets and liabilities is also to be sworn to by the majority of the trustees making the examination required by section 279. Of course, their examination gives them the knowledge—is the basis of their information—as to whether such statements are correct or not. The contention of the defendant's counsel, in substance, amounts to this: That the examination by the trustees, and their statement thereof, is, as to the two principal officers, *res adjudicata* as to the creditors of the bank; that their report must state that it is based upon such examination, and any other report is not called for by the statute, is extrajudicial, and perjury cannot be predicated upon it; that if the report is correctly based upon the examination and verified schedules made by the trustees, then they commit no perjury, although such verified schedules are in fact false, and do not represent, but misrepresent, the true condition of the bank; that if they make a report stating the schedule different from the one prepared and verified by the trustees, and verify it by their oaths, then they would be guilty of perjury, although their report gave the true condition of the bank; and the schedule verified by the trustees did not. It seems to me that the mere statement of the construction contended for is a sufficient answer to it. A construction which will permit the officers of a bank to file and swear to a report which they know to be false, and escape all liability therefor, simply because it is based upon an examination and report made by other officers, cannot possibly be what the legislature intended.

The statute says that the corporation shall make a report in writing at a specified time, to the superintendent of the banking department, of its condition. The indictment says such a report was made. The statute says such report shall state all the liabilities of the corporation, and also the amount due depositors. The indictment says that the report purported to set forth and declare the whole amount due depositors, and specifies the amount the report indicated and declared was due depositors. The statute says such report shall be verified by the oath of the two principal officers of the bank. The indictment says that the defendant is one of the two principal officers of the bank, and, in proper form, alleges that he verified by his oath the said report. The statute also says that any willful false swearing in regard to such, or in regard to any, reports, made to the superintendent of the banking department, pursuant to the provisions of such act, shall be deemed perjury. The indictment charges that the defendant willfully swore that such report was, in respect to the statement of liabilities, in all respects correct, to the best of his knowledge and belief, and showed the true condition of the bank, when, in truth and in fact, it was not in all respects correct to the best of his knowledge and belief, as he well knew; and charges that the statement of the amount due depositors was not the sum set forth in the report, but was a much larger sum, as the defendant well knew. These matters, being set forth in the proper legal form and verbiage, as they are in this indictment, are sufficient. The oath is alleged to have been taken before an officer duly authorized to administer oaths; his name and office are given in the indictment. It was not necessary to set forth in full the affidavit by which he verified the report. All that is necessary is to set forth its substance and ef-

fect. Section 291, Code Crim. Proc.; *People* v. *Phelps*, 5 Wend. 9; Whart. Crim. Law, (9th Ed.) § 1298. The indictment sets forth the amount stated in the report to be due depositors, and then proceeds to state that such sum was not the amount due creditors, but that in fact the amount due creditors was a much larger sum. It was not necessary to specify in the indictment how much larger that sum was. All that was necessary was to negative the truth of the alleged fact or statement upon which the charge of perjury is predicated. It is not like a case of larceny, where the grade of the offense depends upon the value of the thing taken.

Some stress has been laid upon the fact that in section 273 it says that the statement of assets shall be verified by the oath of the trustees, while in section 279 it provides that the schedule or statement of assets and liabilities shall be verified by the trustees. If this indictment was against the trustees so verifying the report, the questions raised upon these differences in the two sections might be of some consequence; but I do not see how they can be in this case. Assuming that the verification or oath of the trustees is defective, I cannot see how that affects the defendant. The oath or verification of the officers and of the trustees are separate and distinct affairs. The one is as to the whole report; the other is as to certain statements in the report. If one is wrong in form, is extrajudicial, or in any way defective, that does not in any way affect the other. However defective the report or affidavit may be in other respects, if in making it out the defendant has willfully, knowingly sworn that the liabilities of the bank—the amount due depositors—was a certain sum or amount, when in truth and in fact it was another and different sum or amount, and he knew it, then he is guilty of perjury. For these reasons I think the court below erred in sustaining the demurrer to the indictment, and that the judgment of the court of oyer and terminer allowing the demurrer to the indictment should be reversed.