MAYHAM, P. J., and HERRICK, J., concurred.

Judgment affirmed, with costs.

---

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. JOHN O. JEFFEREY, Appellant, Indicted jointly with CLARENCE CRAPSER and JOHN RUSAW.

*Indictment charging the obtaining of money under false pretenses — what justifies a conviction — evidence as to character — cross-examination — what evidence warrants a conviction.*

An indictment alleged that the defendants, at the time mentioned, feloniously, fraudulently and designedly, and with intent to cheat and defraud another, procured and obtained the signature of such other person to certain notes described therein by means of the false and fraudulent representations and pretenses therein set forth, and, after stating the representations made, further alleged that each of said representations was false to the knowledge of the defendants.

*Held,* that the indictment should be sustained upon demurrer, although it did not allege that the person defrauded believed or relied upon the alleged representations of the defendants, or that he was thereby induced to sign the notes in question.

The defendants, upon their trial in a criminal action, were shown to have procured the signature to certain notes by the complainant, by agreeing that a certain corporation or firm should thereafter pay him certain sums for oats, alleging that the corporation or firm was solvent.

*Held,* that if the representation as to the solvency of the firm was false, it was a false representation as to a fact existing at the time of the making thereof;

That a false pretense, under which such persons might be convicted, was not the false promise but the untrue statement as to the solvency of the corporation or firm.

Upon the trial of an action brought to convict a person of obtaining money under false pretenses, it is proper, on the question as to the intention of the defendant, to receive evidence of transactions similar to that on account of which the defendant is indicted.

If upon the trial of a criminal action the defendant makes a person a witness for the purpose of proving his good character, the People can properly cross-examine such witness; and if he has testified to the good character of the defendant, the People may ask him if he has heard reports derogatory to the defendant's character, and the testimony of such witness, that he saw in the newspapers that the defendant had been indicted, is admissible in evidence.

It is unnecessary for the People, in case of the indictment of a person under section 566 of the Penal Code, to allege or prove on the trial the value of the instrument the complainant was induced to sign through the false pretenses of the defendant.

An allegation in an indictment that the defendants made a false and fraudulent representation is deemed to be an allegation that each of the defendants made such representation and is sufficient as to each.

To convict a person of obtaining money by false representations the prosecution must show the representations, their falsity, that they were known to be false by the defendant and that the person defrauded relied upon them.

HERRICK, J., dissenting.

APPEAL by the defendant, John O. Jefferey, from a judgment of the Court of Sessions, held in and for the county of St. Lawrence, rendered on the 6th day of December, 1893, convicting him of the crime of feloniously, fraudulently and designedly obtaining the signature of a person to two several promissory notes in writing, with intent to cheat and defraud another, and also from an order and judgment overruling the defendant's demurrer to the indictment, and also from an order denying his motion to quash and set aside the indictment against him and for a new trial and in arrest of judgment.

*D. E. Brong,* for the appellant.

*L. P. Hale, District Attorney,* and *C. A. Kellogg,* for the respondent.

PUTNAM, J.:

It is urged by the learned counsel for the appellant that the demurrer interposed by defendant to the indictment should have been sustained for the reason that the third count thereof, under which defendant was convicted, did not allege that McCann believed or relied upon the alleged representations made by Jefferey, Crasper and Rusaw, or was thereby induced to sign the notes set out in the pleading.

But the indictment did allege that defendant, at the time mentioned, feloniously, fraudulently and designedly, and with intent to cheat and defraud another, procured and obtained the signature of the said John McCann to the two notes described by means of the false and fraudulent representations and pretenses therein set out. After stating the representations made, it further alleged that each of said representations was false, to the knowledge of defendant. We cannot answer the above-stated position taken by the appellant in any better way than to quote an extract from the opinion of MILLER, J., in *Clark* v. *People* (2 Lans. 329), where a similar question arose. The learned justice used the following language : " It will be observed that there is no positive and direct averment that the pretenses alleged had any influence upon the mind of the prosecutor or induced him in any way to part with the oxen, and it would no doubt have been more strictly in accordance with the rules of pleading applicable to such cases to have inserted an allegation embodying a charge of the character stated. It is, however, averred that by the false pretenses alleged the prisoner did obtain the property. This could not be true, in fact, unless the prosecutor believed the false pretenses set forth to be true and they had an influence upon his mind and induced him to part with the property. How could the prisoner obtain the oxen in the manner alleged unless it was done by means of the false pretenses operating upon his mind and influencing his judgment? The allegation that the prisoner made the representation for the purpose named, in connection with the subsequent averment that he did thus obtain the oxen, is equivalent to a statement that he believed the pretenses to be true and was induced thereby to part with the property. First, is the inducement, and then follows the act of obtaining the oxen, the latter as a natural and inevitable consequence of the former. The fair

THIRD DEPARTMENT, DECEMBER TERM, 1894.          [Vol. 82.

and legitimate construction of the last allegation will warrant the inference that, inasmuch as the prosecutor was induced to part with the oxen, that he believed the statements made, and thereby the oxen were unlawfully obtained."

We concur with the view of Justice MILLER above quoted, and are, hence, unable to hold that the position of appellant is well taken.

The defendant also objects to the indictment because it alleges a false promise, and couples it with alleged false pretenses, which are of no importance without the promise, citing *Ranney* v. *People* (22 N. Y. 417). An examination of the authority cited shows that it is not parallel to the case under consideration. The false pretense in this case was founded on false representations as to existing facts by which McCann was induced to deliver to defendant his two promissory notes. In *Ranney* v. *People* (*supra*) the false pretense alleged was the promise of the defendant to employ the complainant at a future time and pay him, when he did not in fact intend to employ him. It was held that the false representation complained of was promissory in its nature, and, hence, that a criminal charge could not be sustained. In this case defendant obtained the notes from complainant by agreeing that a certain corporation or firm should thereafter pay him certain sums for oats, and that said corporation or firm was solvent. The false representation was as to the solvency of the firm as to an existing fact at the time the representations were made. The false pretense counted on was not the false promise, but the statement as to the solvency of the corporation or firm. This case is not different from the ordinary one of false pretense, where one buys goods on credit, falsely representing himself as solvent. In such a case there is a promise to pay for the goods, and the false pretense which would be of no importance without the promise.

Counsel for appellant further claims that the court erred in receiving evidence on the trial of similar transactions to that on account of which defendant was indicted. Such evidence, in cases of alleged false pretenses, where it is important to show the intention of defendant, has been deemed proper. (*Bielschofsky* v. *People*, 3 Hun, 40; affd., 6C N. Y. 616; *Mayer* v. *People*, 80 id. 364.)

Nor do we think that the court erred in allowing the witness

Levan to testify that Jefferey had been indicted; that he saw in the papers that he had. The defendant had made Levan his witness for the purpose of proving good character; on that subject the People could properly cross-examine him, and as he had testified to the good character of the prisoner, the People could properly ask him if he had heard reports derogatory to his character. (*Carpenter* v. *Blake*, 10 Hun, 358–360; *Leonard* v. *Allen*, 11 Cush. 241–245.)

We are of opinion that it is unnecessary for the People, in cases of indictment under section 566 of the Penal Code, to allege or on the trial prove the value of the instrument complainant was induced to sign by the false pretenses of the defendant. The instrument might be one whose value could not be proved. In this case the defendant obtained the notes of McCann, one of which for $100 is now outstanding, and on which he may be compelled to pay $100 and interest. We think the case stated in the indictment and proved on the trial was within the plain provisions of section 566 of the Penal Code.

It was alleged in the indictment that the *defendants* made the false and fraudulent representations therein alleged. This should be deemed an allegation that each of the defendants made such representations, and sufficient as to each.

The appellant further urges that the People on the trial failed to make out a case that authorized the conviction of defendant. The People were compelled to show the representations, their falsity, that they were known to be false by defendant, and that the complainant relied upon them.

The alleged representations were that D. Beers & Co., who had an office at Wilson, N. Y., had a charter from the United States government that would last for several years; there was no danger of McCann's entering into the arrangement proposed by defendants to give them two notes, one for $100 and one for $200, for twenty bushels of oats, in consideration of which D. Beers & Co. would execute a contract to afterwards sell for, or buy of, McCann forty bushels of oats at fifteen dollars per barrel, because the company was strong and had a charter from the government of the United States. Under all the circumstances of the case the word "strong," as used by defendants, should be construed to mean financially

strong or able, the word being evidently used to obtain for the company credit with complainant.

The representations alleged in the indictment were sufficiently proved on the trial as against defendant Jefferey. It appeared that he took part in the conversation between defendants and complainant at the time the notes were executed; told him there was no danger, the company was strong; drew the notes, and was one of the principal actors in the transaction. It was sufficiently shown by the testimony of McCann that he relied on the statements made by the defendants, and was induced thereby to enter into the contract and make the notes.

We think the evidence sufficient to go to the jury as to the falsity of defendant's representations. It required no evidence to show that D. Beers & Co. did not have any charter from the United States government to carry on the business in which they were engaged, and that the representations made in that regard were false. It was shown by testimony, received without objection, that there was a firm of D. Beers & Co. located at Wilson, N. Y., which started in 1889 and ceased in 1890, before the transaction with McCann. The firm was composed of D. Beers and one Seeley, Prior to the execution of the contract between D. Beers & Co. and McCann, D. Beers had sold out his interest in the company to Seeley for a horse and buggy, so that, at the time of the transaction in question, Seeley alone was carrying on the business in the name of D. Beers & Co. It appeared that Seeley had passed through bankruptcy and was insolvent, and his financial standing was not good; hence, instead of D. Beers & Co. being strong, the evidence indicated that it was composed of one man, Seeley, who was insolvent.

As to whether the defendant knew that his statement in regard to the solvency of Seeley, who was doing business in the name of D. Beers & Co., was false, we think, under all the evidence and facts of the case, that the trial judge properly submitted the question to the jury. Jefferey claimed to be an agent of D. Beers & Co., and he lived in the same county with Seeley. Seeley had passed through bankruptcy, was insolvent, and his financial standing was not good at the time of the transaction with complainant. Under the circumstances, whether the positive and false statement of Jefferey to McCann that D. Beers & Co. was strong, made to induce McCann

to execute his notes for $300, was or was not made with knowledge of the falsity of such statement, was a question for the jury. The jury could have found, on the evidence, that the representation made by the defendant was a reckless assertion as to a fact, as to the truth or falsity of which he did not know.

On the whole, we think the case was properly submitted to the jury, and that the evidence sustains the verdict.

Other exceptions were taken, which we have examined, but do not think it necessary to discuss. This court could not properly interfere with the discretion exercised by the trial court as to the sentence imposed upon the defendant.

The judgment should be affirmed.

MAYHAM, P. J., concurred; HERRICK, J., dissented.

Judgment of conviction affirmed.