THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* JOSEPH S. FAY and JAMES BOVE, Appellants.

First Department, December 20, 1945.

*Stephen Callaghan* of counsel (*Thomas R. Fay, Robert J. Fitzsimmons* and *Ralph Stout* with him on the brief), for Joseph S. Fay, appellant.

*Moses Polakoff* of counsel (*Samuel Mezansky* with him on the brief), for James Bove, appellant.

*Whitman Knapp* of counsel (*Joseph A. Sarafite, John D. J. Moore* and *Vincent A. G. O'Connor* with him on the brief; *Frank S. Hogan, District Attorney*), for respondent.

*Per Curiam.* One of the defendants-appellants, Joseph S. Fay, called thirteen character witnesses who testified to his reputation for honesty and fair dealing. It is claimed that the District Attorney improperly cross-examined eight of such witnesses.

A defendant who calls character witnesses makes his own reputation a subject of inquiry at the trial and the People have the right to cross-examine such witnesses upon the subject of inquiry thus presented and may properly ask if the witnesses heard particular reports derogatory to defendant's character to determine credibility and to show the witnesses' grounds of knowledge, provided the inquiry is directed to the witnesses' hearing of the disparaging report as negativing the reputation and provided the inquiry is conducted in good faith. (*People* v. *McKane,* 143 N. Y. 455, 473, affg. 80 Hun 322, 347 [Gen. Term, 2d Dept.]; *People* v. *Laudiero,* 192 N. Y. 304, 309; *People* v. *Jefferey,* 82 Hun 409, 413; *People* v. *Manganaro,* 261 App. Div. 891 [1st Dept.]; *People* v. *Watson,* 54 Hun 637, opinion in 7 N. Y. S. 532 [Gen. Term, 1st Dept.]; *Lawrence* v. *United States,* C. C. A., 56 F. 2d 555, 556; 3 Wigmore on Evidence [3d ed.], § 988, and cases cited in almost all jurisdictions; see, also, *State* v. *Crow,* 107 Mo. 341, 346–347.)

Discussing character witnesses, Wigmore says (3d ed., Vol. 3, § 988, p. 618) : " Such a witness virtually asserts either (a) that the testifier has never heard any ill spoken of the other or (b)

that the sum of the expressed opinion of him is favorable. Now if it appears that this sustaining witness *knows* of bad *rumors* against the other, then, in the first instance, his assertion is entirely discredited; while, in the second instance, his assertion is deficient in good grounds, according to the greater or less prevalence of the rumors. On this principle, then, it is proper to probe the asserted reputation by learning whether such rumors have come to the witness' knowledge; for if they have, it is apparent that the alleged reputation is more or less a fabrication of his own mind."

In *People* v. *McKane* (*supra*) the cross-examination of character witnesses included questions about accusations appearing in the public press and the Court of Appeals said (p. 473): " The defendant having made reputation a subject of inquiry, the People had the right to put before the jury just what that reputation was, though it included the ability to influence and control elections."

In *People* v. *Jefferey* (*supra*) the court held: " Nor do we think that the court erred in allowing the witness Levan to testify that Jefferey had been indicted; that he saw in the papers that he had. The defendant had made Levan his witness for the purpose of proving good character; on that subject the People could properly cross-examine him, and as he had testified to the good character of the prisoner, the People could properly ask him if he had heard reports derogatory to his character. (*Carpenter* v. *Blake,* 10 Hun 358–360; *Leonard* v. *Allen,* 11 Cush. 241–245.) "

The matters here inquired into were not irrelevant to the subject or scope of the inquiry presented by calling thirteen character witnesses but related to the traits of character defendant Fay had put in issue. Practically all of the character witnesses cross-examined admitted having some knowledge or information of one or more of the reports about which he was questioned.

The court without exception correctly charged the rule relating to character witnesses; told the jury that Fay's character had nothing whatever to do with the defense of the other defendant Bove; no exceptions and no request for any additional charge on the subject was made. Fay's counsel fully and freely argued the issue in his summation. Elsewhere in the charge the jury had been instructed that no question is evidence; that it is the answer that is evidence. Under all the circumstances disclosed, the prosecution's inquiry cannot be

held to have been conducted in bad faith and does not present prejudicial reversible error.

On direct examination by the People, the witness Walsh testified only to the effect that he had a conversation with Shea preceding his meeting with the defendants. On cross-examination for defendant Fay, the subject matter of Walsh's conversation with Shea was inquired into to suggest that Shea had said it was a good thing to " make an arrangement " with the labor leaders to protect the job, particularly against the sandhogs' union. Part of the conversation was elicited affirmatively; the inquiry of defendant's counsel as to what Shea told the witness regarding protection from the sandhogs was answered in the negative; but the questions on cross-examination related to what Shea had told the witness Walsh before Walsh went to the meeting with defendants.

In that state of facts the People were entitled to bring out the entire conversation, the court properly instructing the jury that the evidence was competent only as to defendant Fay and that they should disregard it so far as defendant Bove was concerned. The re-examination of a witness is largely in the discretion of the court. Defendant having chosen to open the door as to the conversation, it was proper that the jury should be placed in possession of what it actually was. (*People* v. *Buchanan,* 145 N. Y. 1, 24.)

The trial court in a comprehensive and eminently fair charge that adequately protected defendants' rights submitted the issue of fact to the jury and the jury found both defendants guilty on the first and seventh counts of the indictment. No prejudicial reversible error is shown. Both errors especially relied on for reversal relate to defendant Fay and not to defendant Bove.

The judgments of conviction and the orders should be affirmed.

COHN, J. (dissenting). The rule permitting the prosecution in cross-examining character witnesses called by a defendant in a criminal case to inquire whether rumor concerning particular acts of defendant's alleged misconduct had come to the witnesses' knowledge, is one that may easily lead to unfairness unless strictly supervised (3 Wigmore on Evidence [3d ed.], § 988).

In the present case eight witnesses called by defendant Fay as to his previous good reputation were subjected to extended cross-examination relating to transactions in which Fay had impliedly participated.

While generally the questions took the form as to whether the witness had " heard " or " read " the matters recited, on at least two occasions the form of interrogation was whether

the witness recalled or remembered the transactions or event referred to.

In addition, the scope of the examinations included reference to rumors concerning such irrelevant matters as (1) whether a complaining witness against Fay upon another prosecution had disappeared; (2) charges made against Fay in civil litigation; (3) Fay's activities in carrying on certain businesses which involved "divided loyalty" to his labor union, and the statements of labor officials characterizing such activities; (4) the nature of a resolution being debated at a labor convention (referred to as an "anti-racketeering" resolution), upon which occasion Fay had allegedly committed an assault on a speaker; (5) statements made by public officials characterizing an association formed by Fay as "a racket"; (6) a charge that a holding company leased for an inadequate rental a saloon in which Fay was interested.

The narrow issue being tried here was whether payment by contractors had been induced by implied threats or otherwise.

If rumors of matters so far removed from the charge being tried, but at the same time casting indirect and insidious insinuations concerning the likelihood of guilt of such charge, are to be admitted solely for the purpose of attacking a witness's estimate of reputation, then at least the trial court should carefully admonish the jury as to the weight and effect to be given to such evidence. No adequate instruction on that score was given here.

Error was also committed in allowing the People's witness Thomas J. Walsh to testify in his redirect examination, over objection and exception, to a conversation had in the absence of defendants with Charles Shea (who died two years before the trial). The court decided that such hearsay testimony was admissible on the theory that defendants had opened the door to everything that Shea had said to Walsh because of questions asked by Fay's counsel in cross-examination of Walsh. The cross-examination did not open the door to unrestricted testimony by Walsh as to the conversation he had with Shea.

It is the rule that where part of a conversation has been given in evidence by one party, the other party is entitled to bring out the entire conversation. (*Platner* v. *Platner,* 78 N. Y. 90, 103.) However, on the trial no part of the conversation between Walsh and Shea had been elicited by the defendants, hence the rule is not applicable. "This was not a case where a part of a conversation being given, the rest was needed in order to present the situation fairly." (*People* v. *Flaherty,* 162 N. Y. 532, 545.)

Evidence of the alleged conversation was harmful in that it purported to show that Shea had been approached on his own job by Fay and perhaps Bove and other labor leaders and that these leaders had asked for certain sums of money; that he (Shea) had never paid money before and was very loath to do it; that he was persuaded to do so by these labor leaders on the plea that it would be to the best interests of his job and that these same leaders wished to see Walsh.

While the court received this testimony only as against defendant Fay, it undoubtedly had a serious adverse effect upon his codefendant as well, for, according to the claim of the People, Fay and Bove almost invariably acted together. By the jury's verdict it was demonstrated that the jurors believed the testimony of Walsh as to his payments to defendants and the criminal purpose of such payments. The manifest object of the challenged testimony given by Walsh was to show prior similar allegedly extortionate payments exacted by these very labor leaders from Shea, who was not available as a witness. Who can tell how much weight the jury in adjudging these defendants guilty gave to this incompetent hearsay testimony? It should not have been received for any purpose and its admission was highly prejudicial to both defendants.

For the foregoing reasons the judgment of conviction against each defendant should be reversed and a new trial ordered.

MARTIN, P. J., TOWNLEY and DORE, JJ., concur in *Per Curiam* opinion; COHN, J., dissents and votes to reverse the judgment of conviction against each defendant and order a new trial, in an opinion in which CALLAHAN, J., concurs.

Judgments and orders affirmed.