Burke, J. (dissenting).
The defendant, a 19-year-old Puerto Rican youth, was indicted for assault, second degree, on a police officer and of violation of section 1851 of the former Penal Law. After a jury trial, he was convicted of assault as a misdemeanor and of violation of section 1851 and a reformatory sentence was imposed.
The facts giving rise to defendant’s arrest and conviction were fundamentally disputed at the trial and the key factor on this appeal is that defendant’s conviction depended on the crucial question as to whether the jury would believe the police officer’s version of the facts or the version given by defendant and an eyewitness called by the defendant. At the trial, defense counsel called one Lopez as a character witness and Lopez testified on direct examination that, during the time he had known the defendant, he had heard nothing which would in any way reflect adversely on defendant’s character. On cross-examination, the prosecutor employed a classical technique for testing the reliability of such a character witness — he asked whether the witness, in discussing the defendant with others in the community, had ever heard anyone say that the defendant was selling narcotics on the beach at Orchard Beach during the preceding summer. Defense counsel objected to the question and unsuccessfully moved for a mistrial. After the witness had answered that question in the negative, the cross-examination continued and *636 the witness was then asked whether he had ever heard it discussed in the community that the defendant had taken part in four taxicab holdups. Defense counsel again objected and unsuccessfully moved for a mistrial.
Defendant himself then took the stand and his direct testimony wras limited to his version of the facts underlying the indictment. On cross-examination, however, the prosecutor asked the defendant a series of questions whose form and content necessarily implied his involvement in the holdups.' To these questions defense counsel also took objection.
Although I recognize that a character witness can be cross-examined as to whether he has heard rumors as to particular acts of misconduct by the defendant to whose good character he testified (People v. Laudiero, 192 N. Y. 304; People v. Fay, 270 App. Div. 261, affd. 296 N. Y. 510; Fisch, New York Evidence, § 178) and that the defendant himself can be cross-examined as to specific acts of misconduct in an effort to attack his credibility (People v. Sorge, 301 N. Y. 198), I would recognize limitations more stringent than those which the majority of this court recognizes in this case. As long ago as the opinion of this court in People v. Malkin (250 N. Y. 185) this court recognized the dangers inherent in the rule which permits the prosecution to inquire into specific acts of misconduct when cross-examining a criminal defendant and also recognized the practical futility of the accompanying rule that negative answers to such questions are ‘ ‘ conclusive ” on the prosecution where “ questions are permitted which are calculated by' suggestion of misconduct to prejudice the jury regardless of the answer given ”. In the language of that opinion, 1 ‘ The court may not close its eyes to results which are intended to flow and do flow from the question itself.” (People v. Malkin, supra, p. 197.) In addition, I would give practical and effective force to the specific language used by this court in its opinion in People v. Sorge (supra) to the effect that the questions asked of the defendant on cross-examination as to such acts of alleged misconduct must 1 ‘ have basis in fact ’ ’ and must be asked by the prosecutor “ in good faith ”. (301 N. Y. 198, 200, supra.) And, since the danger of prejudice to the defendant is equally present when such questions are put to a character witness on cross-examination, I see no logical basis for refusing to apply the same limitations as are applicable to cross- *637 examination of the defendant himself. If such practical effect is to he .given to the limitations set forth in Sorge, it is clear that a basis in fact cannot be established when the only basis for asking the question is rumor, surmise or suspicion and it is also clear that the prosecutor does not have the requisite “ good faith ” if that is the only basis upon which he is moved to ask the questions at issue. The basis presented to the Trial Judge in this case amply demonstrates that practical content must be given to conceptual limitations recited in Sorge and so prejudicially applied to this defendant. The prosecutor told the Trial Judge that he had been told by a police officer that several persons had told the officer that the defendant would “ stay on a blanket at Orchard Beach and would be selling marijuana cigarettes. ” As a result of such information, an ‘1 undercover man was assigned to watch him on the beach ” but, significantly, the prosecutor could not report even a scintilla of evidence that defendant was, in fact, engaging in the sale of such cigarettes or any other illegal activity. On this presentation, it is one thing to say that the prosecutor may ask a character witness whether he has heard any rumor as to a specific act of misconduct by the defendant; it is quite another, and different,, thing to say that the prosecutor may take a rumor that is current only among members of the police department and some unnamed persons and waft it into the jury box despite the fact that he knows that the rumor has been tested by surveillance of the defendant and found to be lacking in factual support. Even more demonstrative is the prosecutor’s use of the questions about the taxi robberies in cross-examining the defendant. The prosecutor, to establish a ‘‘ basis in fact ’ ’ and ‘ ‘ good faith ” as to these questions, told the Trial Judge that there had been four robberies of taxi drivers in The Bronx, all committed according to a particular modus operand!; that a police officer, after one such robbery, followed footsteps in the snow to a particular apartment building; that, after a similar robbery a few nights later, the same police officer went to the same building and found two brothers, one of whom fit the description of one of the participants in the taxi robbery; that defendant was found asleep, fully clothed, in the apartment occupied by these brothers; and, in the room were found a portable radio allegedly taken in one of the robberies, changers and the keys to three taxis. Additionally, and significantly on the present issue, the two *638 brothers were indicted for the robbery but the Grand Jury refused to indict the defendant (because, according to the prosecutor, the defendant “ had not been * * * riding in the taxicab ”). This recital was presented and accepted as sufficient over the objection of defense counsel and the Judge instructed the jury that the evidence thereafter adduced by way of the questions as to these incidents was relevant only on the issue of credibility and that it was not in any way probative of defendant’s guilt of the acts referred to. If the limitations in Sorge are to have any significance, they should be so applied in this case as to hold that the prosecution established neither a “ basis in fact ” nor “ good faith ” in asking the questions as to selling marijuana cigarettes and participating in the robbery of taxis. Clearly, this is not a case like People v. Shivers (21 N Y 2d 118, 122) where we noted that “ it was not error for the court to permit the District Attorney to cross-examine the defendant concerning an earlier attempted burglary, in which he was actually caught in the act, even though he had not been prosecuted therefor.” (Emphasis added.) A “ good faith” belief that an alleged specific act of misconduct has a ‘ ‘ basis in fact ’ ’ must be held to require more than flimsy surmise, conjecture or suspicion unless we are willing to let the very purpose for which restrictions were imposed be thwarted by the prosecution’s resort to “an instrument which [it] may use not wisely but too.well” (3 Wigmore, Evidence, § 983, pp. 550551). In the face of the obvious potential for prejudice to the defendant, courts must be willing to reappraise the hallowed rules of evidence, such as the ones applied to the prejudice of the defendant in this case, in light of the realities of the trial context and especially in light of the difficulty which a lay jury must necessarily face in attempting the mental segregation of an item of evidence so that it considers that item for one limited purpose (credibility) but completely ignores that same evidence when it decides another issue (guilt of the crime charged).
It should also be realized that the relatively unrestricted use by the prosecution of such cross-examination techniques as are involved here can have a sinister and chilling effect on the defendant’s decision as to whether or not he should testify in his own behalf. Faced, as this defendant was, with the choice either of pitting his own version of the facts against that of the *639 police officer or of remaining mute and relying on the testimony of his eyewitness, he might well have foregone the opportunity to testify, especially if he had known that he would be faced with the necessity of defending himself against the insinuation of his implication in robberies and narcotics crimes as well as defending against the acts charged in the indictment. It is indeed somewhat inconsistent to enforce a rule against comment by the prosecution on the defendant’s failure to testify while at the same time allowing the prosecution to impose even more prejudicial burdens on a defendant who chooses to testify by forcing him to defend himself against rumor, suspicion and surmise.
Finally, it is apparent from the increasing number of cases in which questions are raised concerning the extent of the cross-examination of criminal defendants that the entire body of evidence rules affecting this area are in need of a thorough and searching reappraisal. For all of these reasons I respectfully dissent and note that I would reverse the conviction and remit the case for a new trial.
Judges iSoileppi, Keating, Bbeitel, and Jasen concur with Judge Bebgan ; Judge Burke dissents and votes to reverse in a separate opinion in which Chief Judge Fuin concurs.
Judgment affirmed.