■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ISRAEL MELENDEZ, Appellant. — Judgment, Supreme Court, Bronx County (McNab, J.), rendered on September 13, 1979, convicting defendant, after trial by jury, of murder in the second degree and criminal possession of a weapon in the second degree and imposing an indeterminate sentence of 15 years to life, is affirmed. Defendant and codefendant, Robert Mendez, were convicted of murdering Mario Hernandez on evidence that was, in the main, circumstantial. Our dissenting colleagues would reverse defendant's conviction on the ground that certain testimony was improperly admitted at trial. However, the dissent does concede that Melendez' counsel on cross-examination of Detective Alexis, the investigating officer, questioned this witness concerning whether Jesus Marrero was considered a suspect in this crime. The dissent then, without citation or any legal authority, concludes that it was improper to admit on redirect examination that portion of Detective Alexis' testimony which centered on the same topic as elicited on cross-examination. A majority of this court can find no error with any portion of this redirect testimony since defendant's counsel consciously initiated this line of questioning and thus opened the door. On cross-examination, defense counsel asked: "Q. Detective Alexis, when Marrero was brought down to the precinct he was a suspect, wasn't he? A. Yes, he was. Q. And you advised him of his rights, is that what you testified before, of his constitutional rights? A. Yes, I did. Q. And you began asking him about the homicide that had occurred in January, is that right? A. That's correct. Q. Did you advise him that he was a suspect, in those words? A. No, I did not." In addition, counsel inquired: "And at that time isn't it a fact that you indicated that Mr. Melendez had committed a crime in concert with two others, is that right?" On redirect Detective Alexis was asked to explain upon what basis he had determined that Marrero was a suspect. The court then correctly overruled an objection to this question on the ground that the cross-examination by defendant's counsel had opened the door. The detective proceeded to relate how he came to consider Marrero a suspect. This testimony was not introduced as evidence of defendant's guilt but rather to show how Detective Alexis gained his knowledge to believe that Marrero was a suspect. "All statements which are used to indicate circumstantially the speaker's knowledge, reason, belief, intent, emotion or other state or condition of mind are not hearsay" (Richardson, Evidence [10th ed], § 205, p 182). The statements of this witness clearly fall within this category and are, therefore, admissible. Also, it is obvious that defendant was seeking to impugn the credibility of Marrero. To accomplish this, defendant established by cross-examining Detective Alexis, that Marrero was indeed considered a suspect by the authorities. This strategy was employed to emphasize that Marrero could have been an accomplice in this homicide. As a result of these efforts by the defendant, the District Attorney is permitted to clarify the grounds upon which the detective based his suspicions. There can be no argument that a party may, on redirect, clarify any misleading or discrediting testimony which may have been brought out on cross-examination. *(People v Fay,* 270 App Div 261, affd 296 NY 510, affd, 332 US 261.) Moreover, the District Attorney is certainly permitted to show that there was no collaboration between his office and the accused for the purpose of convicting an innocent man. Concur — Sullivan, Ross and Markewich, JJ.

Sandler, J.P., and Fein, J., dissent in a memorandum by Sandler, J.P., as follows: In the afternoon of January 10, 1978, Mario Hernandez (who was known as "Cuba"), was shot to death in the hallway of a public housing project at 700 Westchester Avenue. Although several tenants heard gunshots, indistinct sounds of conversation, and the footsteps of someone running down the stairway, no one observed the actual event or saw the person or persons who committed the homicide. In early July, 1978, as a result of information provided by one Jesus Marrero (himself a suspect), Detective Alexis arrested the appellant Israel Melendez and a codefendant Robert Mendez. Melendez and Mendez were convicted after a jury trial of murder in the second degree and criminal possession of a weapon in the second degree. The Mendez conviction was previously affirmed by this court (74 AD2d 1006). The principal witnesses against the defendants were Jesus Marrero and Hector Camacho. Marrero, who had known the deceased and the defendants, testified that on January 12, 1978 he was on a 24-hour pass from a methadone treatment program when he met Mendez, whom he asked for money previously lent for bail in connection with a prior arrest. In the course of the following conversation, Mendez said that "the homicide squad was looking for him for something Paleta (Melendez) had done," that Paleta and one "Chino" had "took off a guy in the project," that Melendez had shot him, and that they had escaped in Chino's car. Marrero further testified that on the following day, January 13, 1978 he was with Melendez, Mendez and others on a rooftop when Melendez said to Mendez that "if he would have held him right, he wouldn't have had to shoot him," and Mendez answered that "it was his fault for not searching him right." In the conversation the nickname of the deceased, "Cuba", was referred to by the defendants. Hector Camacho testified that on a date in January, 1978, he had finished getting high on the rooftop of the building and was going down the stairs when he heard Mendez ask Melendez "what he shot him for." The principal issue on this appeal is presented by testimony elicited from Detective Alexis, the arresting detective, on redirect examination which was admitted on the finding that "the door had been opened" by questions put to Alexis on cross-examination by appellant's counsel. In response to questions by appellant's counsel, Alexis had testified in substance that Marrero was a suspect when brought to the precinct, denied that Marrero was told that he was a suspect "in those words" and agreed that in the Melendez arrest report it was stated that two others had participated in the crime. On redirect the District Attorney asked the detective for the basis upon which he had considered Marrero a suspect. This was objected to by appellant's counsel as intended to bring out hearsay testimony regarding the police officer's investigation. No objection was registered by counsel for Mendez. The trial court overruled the Melendez objection, stating that counsel for Melendez had "opened the door." The detective then responded that he had been informed shortly after the homicide that the two persons responsible were named "Paleta" and "Piro", and that his informant identified "Paleta" as the appellant Israel Melendez, and "Piro" as Jesus Marrero. The detective further stated that he had learned from other people that Jesus Marrero was known both as "Pete" and "Piro", but that Marrero had told him when questioned that he himself was known as "Pete" and Robert Mendez was known as "Piro", and that the two looked alike and were often mistaken for each other. As noted, this evidence was introduced on the theory that appellant's counsel had "opened the door" in the interrogation of Detective Alexis. The phrase, commonly used in trials and a particular favorite of trial prosecutors, has long seemed to me curiously imprecise and unclear in its meaning and application, considering the importance the principle it embodies has in numerous trials. I think there would be general agreement that the principle is validly applicable where on cross-examination

information is elicited that is partial, incomplete or misleading and that can be clarified only by evidence that would otherwise be inadmissible. That general principle would not seem pertinent to the situation disclosed here, since there appears to be nothing misleading or incomplete in the answers that had been brought out by appellant's counsel on cross-examination. Appellant's counsel had developed that Marrero had been considered a suspect, and it is clear that in fact he was a suspect. She intimated that Marrero might have known from the interrogation that he was considered a suspect at the time he incriminated the appellant and Mendez, and the detective's answers on redirect strongly confirmed that Marrero indeed had reason to believe that he was a suspect. She invited attention to the fact that Melendez' arrest report indicated the participation of three people in the homicide, with the implication that Marrero may well have been the third participant, and nothing said by Detective Alexis on redirect refuted that possibility. Indeed, in the District Attorney's summation, he strongly argued that the jury might reasonably consider that Marrero was the third participant, and that contrary to Marrero's own testimony, the statements attributed by him to the defendants may have been the explanation given by two accomplices to the third as to what had gone wrong. Nothing in the cross-examination raised a question as to the credibility of Alexis that could only have been responded to by eliciting otherwise inadmissible testimony, another situation in which the concept of "opening the door" is sometimes applied. And if Marrero's involvement as a participant in the homicide was in fact an issue before this jury, that surely would have been a factual question for the jury to determine, like any other, on the basis of admissible testimony. Nothwithstanding the above, I agree that there was at least an arguable basis for admitting some of that which was brought out on redirect examination. In effect appellant's counsel had developed that Detective Alexis had formed the opinion at some point in the investigation that Marrero was a possible participant. It may therefore have been appropriate to allow the jury to learn the factual basis for that opinion so that the jury would not be tempted to speculate as to the strength and quality of the information underlying that suspicion. However, it was surely critical to limit the examination to that which in fact presented the basis for the detective's opinion and not permit his answers to be converted into a vehicle for the needless introduction of incriminating hearsay evidence against the defendants. It is not necessary to decide here whether the factual basis for the detective's opinion could have been presented adequately without unnecessarily introducing otherwise inadmissible evidence incriminating Mendez and, if not, whether a balancing of legitimate probative value against accompanying prejudicial impact would have justified admission of the testimony. In any event, counsel for Mendez did not object, and it seems clear that this was a purposeful decision, reflecting a quite reasonable and possibly correct judgment that exploration of the issue would on balance be helpful to Mendez, given the confusion inherent in the circumstance that Mendez and his accuser were both known as "Piro". The situation is clearly otherwise as to Melendez, whose lawyer properly objected. Testimony that a neighborhood source had identified him as one of two participants in the homicide within two days after the event was inevitably and seriously prejudicial to him. This testimony was wholly unnecessary to enable the jury to understand and evaluate the basis for the detective's opinion that Marrero was a suspect. On any balancing of the legitimate value of that part of the Alexis testimony on redirect against its palpable prejudicial effect on Melendez, it seems obvious that the testimony was erroneously admitted, and that the error was prejudical under all the circumstances. Although the evidence was sufficient to support the conviction of the two defendants, it was certainly not overwhelming. Marrero was a drug

addict, previously convicted of varied crimes, who was himself a suspect in the homicide at the time he incriminated the two defendants. Indeed, it is unmistakably clear from the trial assistant's summation that he himself believed, contrary to Marrero's sworn testimony, that Marrero had in fact been the third participant in the homicide, and strongly urged that view on the jury. The second witness, Camacho, was also a drug addict at the time of the event to which he testified who had appeared in court to testify in response to a subpoena served upon him by Marrero at the request of the District Attorney. Camacho in short had been "delivered" as a witness by Marrero. Although the trial in all other respects was conducted with exceptional skill by an able and scrupulously impartial Trial Judge, I cannot persuade myself that it was harmless error under the circumstances to admit hearsay evidence that the appellant had been identified within two days after the homicide as a participant. For the reasons indicated above, the judgment of the Supreme Court, Bronx County, rendered September 13, 1979, convicting defendant following a jury trial of murder in the second degree and criminal possession of a weapon in the second degree, should be reversed and the case remanded for a new trial.